W. A. SLOPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110145. Promulgated March 10, 1943.

*Herbert L. Swett, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

748

OPINION.

HARRON, *Judge:* Section 123 (a) of the Internal Revenue Code, enacted by section 223 (a) of the Revenue Act of 1939, provides that:

Amounts received as loans from the Commodity Credit Corporation shall, at the election of the taxpayer, be considered as income and shall be included in gross income for the taxable year in which received.

Respondent agrees that the partnership has elected, properly, under the statute, subsection (d) of section 223 of the Revenue Act of 1939, as amended by section 154 (b) of the Revenue Act of 1942, and under his regulation, to treat the loan as income. That is, the

election has been made in accordance with the respondent's regulation which he promulgated on August 7, 1939, in Cumulative Bulletin 1939-2, pp. 128 to 130, T. D. 4918. The regulation provides that a taxpayer who has received a loan within any taxable year beginning after December 31, 1933, and before January 1, 1939, may include the amount of such loan in his gross income "for the taxable year in which the loan was received," if he meets certain conditions. The question here requires determination of what year it was in which petitioner received the loan.

Respondent has determined that the loan was received in 1939. Respondent's position is that there was no constructive receipt of the loan by the partnership in 1938, as petitioner contends, even though the loan was approved and the check for the loan was mailed on December 30, 1938, and the Commodity Credit Corporation regarded the loan as made on that date and charged interest on the loan from that date. Respondent relies on *Avery* v. *Commissioner*, 292 U. S. 210.

Petitioner's argument is as follows: The loan agreement was entered into on December 30, 1938. The pledge of the warehouse receipts was accepted by the Commodity Credit Corporation on December 30, 1938. The intent of Congress was that the recipient of a Commodity Credit Corporation loan for a commodity could consider the proceeds of the loan as the equivalent of proceeds from a sale at the time the loan is made, so that such proceeds could be included in gross income in the same year the deductions for expenses of production of the commodity involved are available. The correct view, therefore, according to petitioner's theory, is to regard the transaction as a contract of sale by the partnership of the hops which were pledged and which were not redeemed, which was entered into on the date that the loan was approved and the check was mailed by the Commodity Credit Corporation, i. e., on December 30, 1938. Petitioner contends that in taking such view of the transaction it is not material that the proceeds of the loan were not received until January 9, 1939. Petitioner contends that the partnership, through its agent, the Stabilization Corporation, could have obtained the check for the loan from the Commodity Credit Corporation at its office in Portland, Oregon, on December 30, 1938, merely by asking for it. Petitioner contends that all of the steps which were required to be taken to complete the making of the contract with the Commodity Credit Corporation were completed on December 30, 1938, even though the cash was not received until in January of 1939. Petitioner contends that the proceeds of the transaction were, in fact, credited to the partnership on December 30, 1938, by Commodity Credit, and that under respondent's regulation income so credited

or set apart to a taxpayer is subject to tax for the year so credited or set apart, though not then actually reduced to possession. Regulations 101, p. 176, section 42-2. Petitioner contends that the *Avery* case is distinguishable, because Commodity Credit had the intention to make actual payment of the loan proceeds on December 30, 1938, which is the date from which interest ran, whereas in the *Avery* case it was established that the intention was that the dividend was not to be received by the stockholder until January of the year succeeding the year in which the dividend was declared. Petitioner argues that there can be no doubt that the Stabilization Corporation acted as the agent of the partnership in obtaining the loan, and not as principal, and points out that, if the Stabilization Corporation were to be regarded as the principal which entered into a loan agreement with Commodity Credit, then it would follow that the partnership had no standing as a recipient of a Commodity Credit Corporation loan under section 123. Petitioner contends that respondent is foreclosed from making such argument, because he has agreed, under the stipulation of facts, that petitioner is entitled to the benefit of section 123 as a direct borrower from the Commodity Credit Corporation. Petitioner relies on *Ruml* v. *Commissioner*, 83 Fed. (2d) 257; *Commissioner* v. *Dashiell*, 100 Fed. (2d) 625; *James E. Lewis*, 30 B. T. A. 318.

There is no question on the point that the Stabilization Corporation was the agent of the partnership. The facts show clearly that it was. However, petitioner has failed to give proper consideration to the fact that the partnership, as well as himself, reported income on the cash basis. The statute, section 123 (a) of the Internal Revenue Code, provides that "amounts received as loans  *  *  *  shall be included in gross income for the taxable year in which received." The term "received" in the statute must be given effect in the light of the method which the taxpayer uses to report income. In our opinion, the statute places emphasis on the word "received."

Neither the Stabilization Corporation, nor the partnership, nor the petitioner received the amount of this loan either actually or constructively in 1938. The application for the loan was accepted by the Commodity Credit Corporation on December 30, 1938, at Portland, Oregon. The Commodity Credit Corporation mailed its check for the amount of the loan on that day to the agent of the petitioner in Oakland, California. Apparently that was the usual way in which the Commodity Credit Corporation did business. The check was not received by the agent of the petitioner until January 3, 1939. Under those circumstances, it seems clear that there was no receipt in 1938. The fact that Commodity Credit charged interest from December 30, 1938, is not determinative. The partnership did not report income

on the accrual basis. Being on the cash basis, it could not be required to report the "amount received" as income until the income was received.

Furthermore, there is nothing to indicate that the petitioner could have obtained this money in 1938. There is nothing to indicate that it turned its back upon earlier receipt of the money. In fact, there is no indication in the record that either the partnership, its agent, or the petitioner knew the loan had been granted until the check was received. Under these circumstances, the rule of the *Avery* case applies here, and there was no constructive receipt of the loan in 1938.

It does not help the petitioner to treat this transaction as a sale of hops, because a taxpayer on the cash basis reporting gain from the sale of property, under the circumstances of this case, would not report the gain as income for 1938. He does not report his gain until he receives the purchase price.

It is held that 1939 was the year in which the Commodity Credit Corporation loan was received by the partnership. Respondent's determination is sustained.

*Decision will be entered for the respondent.*