Harry Bernard McEuen v. Commissioner.
Harry Bernard McEuen v. Commissioner
Docket No. 21988.
United States Tax Court
1950 Tax Ct. Memo LEXIS 55; 9 T.C.M. (CCH) 1006; T.C.M. (RIA) 50278; November 3, 1950
Robert P. Smith, Esq., 508-12 Bowen Bldg., 815 15th St., N.W., Washington, D.C., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined an income tax deficiency of $8,317.57 against petitioner for the year 1943. The question is whether or not petitioner received in 1943 as income from an invention by him a payment of $10,000, and by reason thereof received in the taxable year 80 per cent of the aggregate income from the said invention during the taxable year, the year preceding and the year following so as to bring the 1943 income within the provisions of section 107 (b) of the Internal Revenue Code. Findings of Fact *56 The petitioner, a resident of Jacksonville, Florida, filed his income tax return for the calendar year 1943 with the collector of internal revenue for the district of Florida. He reported his income on the cash receipts basis. In 1925 petitioner, a physician, had become interested in improving the X-ray. He devoted his odd time to this project and about 1927 reduced his ideas to drawings. In the latter part of 1929 he had a patent search made and on February 15, 1930, applied for a patent. On May 12, 1936, Patent No. 2,040,411 was issued by the Patent Office to the petitioner covering this improvement on X-ray apparatus. Sometime after the procurement of the patent a controversy over patent infringement arose between petitioner and the Kelley-Koett Manufacturing Company of Kentucky, and the Picker X-Ray Corporation of New York and Ohio. Both of these companies were engaged in the manufacture of X-ray equipment and in their various activities had violated petitioner's patent rights. Sometime during or just prior to the year 1943 patent infringement was admitted by these companies. After extended negotiations a contract was entered into by the parties in 1943 providing for a lump *57 sum payment by each to petitioner in addition to certain royalty rights. Pursuant to this agreement petitioner received a lump sum payment from the Kelley-Koett Company sometime in 1943 of $27,736.10. The payment of the Picker X-Ray Corporation was to be made in installments. At the time of making the agreement a down payment of $7,500 was to be made, $5,000 was to be paid on January 5, 1944, and the remaining $10,000 on January 5, 1945, making a total of $22,500. The initial payment was made by the Picker Company about the time of reaching the agreement in 1943. Thereafter, on or about the 20th of December, 1943, the $5,000 which was due January 5, 1944, was paid. On December 26 or 27, petitioner's attorney received a telephone call from Mr. Picker, president of the Picker-X-Ray Corporation, asking that the corporation be allowed to anticipate the $10,000 payment due January 5, 1945, so as to get the tax advantage of payment thereof in 1943. The attorney agreed to this arrangement and told Picker he would talk to petitioner and unless he telephoned that day to tell him differently payment would be accepted. The petitioner was then contacted and at the suggestion of the attorney *58 agreed to accept payment. On December 30 or 31, the attorney received from Picker a letter dated December 29, 1943, and mailed from the Office of the President in New York, advising that a Mr. Reiman was out of town until after the first of the year and that he had instructed "Cleveland to issue a check in final payment which you can deposit any time his year or next year." When the attorney received this letter he telephoned the petitioner to advise him that the check was on the way. The check was drawn on the Cleveland Trust Company and was dated December 30, 1943. It was received by mail by petitioner's attorney within a few days after receipt of the December 29 letter from New York, but the exact date on which the check was received is not known. December 31, of 1943, was on Friday and the attorney's office was closed part of the day. About three or four days after the attorney had received the check he telephoned petitioner to tell him that it had arrived, and sent it over to him by one of his office girls. Petitioner did not know when he could have expected the check to arrive nor did he remember the date he actually received it, except that it was received by him early in *59 January, 1944. On January 7, 1944, he deposited it with the Florida National Bank in Jacksonville. Petitioner's auditor computed his income tax for the year 1943 from information he received from office memoranda recording cash receipts which petitioner made available to him for that purpose. The $10,000 had been recorded by a memorandum in 1944. Relying on these memoranda, the auditor reported the $10,000 in 1944. In petitioner's income tax return for 1943 income tax net income of $44,923.40 was listed. A total of $40,236.10 listed on an accompanying statement was noted as income received through suit on patent infringement. The said $40,236.10 was regarded as meeting the requirements of section 107 (b) of the Internal Revenue Code and in computing the tax one third thereof was prorated to each of the years 1941, 1942 and 1943. The respondent determined that the amounts received on the patent in 1943 did not constitute 80 per centum of the aggregate of the amounts so received in 1942, 1943, and 1944 and that petitioner was not, therefore, entitled to prorate his 1943 patent income to the years 1941, 1942, and 1943 for the purpose of computing his 1943 income *60 tax. Opinion The disposition of this case turns on the question whether or not the $10,000 received by petitioner from Picker X-Ray Corporation and paid by the check of that corporation dated December 30, 1943, was income to the petitioner in 1943 or in 1944. If the $10,000 was part of petitioner's 1943 income then the income received by him in 1943 was more than 80 per centum of the aggregate of such income received by him for the years 1942, 1943, and 1944 and under the provisions of section 107 (b) of the Internal Revenue Code[1] the petitioner in computing his 1943 income tax is entitled to prorate the income realized from the invention to the years 1941, 1942, and 1943. *61 It is the claim of the petitioner that the $10,000 in question was income to him for the year 1943 and not for 1944 as originally reported by him. As a basis for this argument he contends - first, that the check was actually received in his behalf by his attorney in 1943 and second, that even though the check was not received in 1943 the said $10,000 of income was constructively received in 1943. He admits that if the $10,000 in question was not income to him in 1943, then the income received by him in 1943 from the patent does not meet the 80 per centum requirement of the statute. The contention of the petitioner that the $10,000 check was received by his attorney in his behalf on or before December 31 must be rejected for failure of proof. Neither the petitioner nor his attorney was able or willing to say that the check was in fact received in 1943. They did know that it was received within a day or two or a few days after receipt of the letter which had been mailed from New York under date of December 29. The check, however, was mailed from Cleveland and was dated December 30. It was delivered to petitioner by one of his lawyer's employees sometime during the following week *62 and it was deposited by petitioner in his bank in Jacksonville on January 7. In view of the equivocal testimony of both petitioner and his lawyer we are not in a position to conclude from the facts which are definitely established that the check was received in petitioner's behalf by his attorney prior to January 1, 1944. The petitioner argues further, however, that even though the check was not received by the attorney in petitioner's behalf until sometime in January 1944, that a definite understanding and agreement for its payment had been reached prior to the end of 1943, that the money was unqualifiedly available to petitioner in 1943, and as a consequence the payment was constructively received in that year even though not actually made until 1944. In section 42 (a) of the Internal Revenue Code it is provided that income shall be included in the taxpayer's gross income for the taxable year in which received, unless under other methods of accounting permitted by the statute, such amounts are to be properly accounted for as of a different period. In the instant case the petitioner kept his books and reported his income by the cash method and under the statute *63 items of income are taxable income to him for the year "in which received." No receipt of income in 1943 has been established with respect to the $10,000 item in question. The agreement or understanding that payment was to be made was not payment, actual or constructive. Avery v. Commissioner, 292 U.S. 210; Lavery v. Commissioner, 158 Fed. (2d) 859, affirming 5 T.C. 1283; Hedrick v. Commissioner, 154 Fed. (2d) 90, affirming a memorandum decision of the Tax Court [4 TCM 536,]; and W. A. Sloper, 1 T.C. 746. Commissioner v. Bingham, 35 Fed. (2d) 503, was decided prior to the opinion of the Supreme Court in Avery v. Commissioner, supra, and was under a different statute. Decision will be entered for the respondent. Footnotes
1. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. * * *
(b) Patent, Copyright, Etc. - * * * If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that of the period preceding the close of the taxable year but not more than thirty-six calendar months.↩