## McEUEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13684.

United States Court of Appeals
Fifth Circuit.

April 10, 1952.

Robert P. Smith, Joseph W. Kiernan, Washington, D. C., C. D. Towers, Jacksonville, Fla., for petitioner.

C. Moxley Featherston, Ellis N. Slack, Harry Baum, John J. Kelley, Jr., Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Rollin H. Transue, Sp. Atty., Bureau of Int. Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

The ultimate effect taxwise of the decision in this case will be to determine whether or not petitioner received in 1943, 80 percent of the aggregate income received from his invention in the three critical tax years, and, therefore, is entitled to be taxed on his 1943 income under the provisions of Sec. 107(b), I.R.C., 26 U.S. C.A. § 107(b).[1] The primary, the determinative question, however, presented for decision in the Tax Court and here is whether a payment of $10,000 made to the taxpayer by check dated Dec. 30, 1943, deposited by taxpayer in 1944, and returned by him as income for that year, was constructively received in 1943, and was returnable, and should be treated, as income in that year.

That the greatly increased amount of taxes which petitioner will pay or be saved from paying, according to the one answer or the other, has given added vigor to both commissioner and taxpayer in the struggle for the answer each desires, may be taken for granted. That this consideration did not affect the decision by the Tax Court of the primary question and will not affect our decision[2] may also be taken for granted.

1. Cf. Williams v. United States, 84 F. Supp. 362, 114 Ct.Cl. 1.

2. Because the opinion of the Tax Court is unreported, a brief statement of the dispositive facts will be first made. These are:

Petitioner, the owner of a patent, No. 204011, covering an improvement of X-Ray apparatus, became involved in a controversy with companies engaged in the manufacture of X-Ray equipment. Sometime during, or just prior to, the year 1943, patent infringement was admitted by these companies and in 1943, a contract was entered into by the parties providing for a lump sum payment by each to petitioner in addition to cer-

The Tax Court stated correctly that the disposition of this case turns on the determination of the question whether the $10,000 received by petitioner from Picker X-Ray Corporation and paid by the check of that corporation dated Dec. 30, 1943, was income to the petitioner in 1943 or in 1944. If it was constructively received in 1943, and was, therefore, part of the 1943 income, the commissioner's determination was wrong. If it was not so constructively received, the contrary is true.

The Tax Court, on the authority of Avery v. Commissioner, 292 U.S. 210, 54 S. Ct. 674, 78 L.Ed. 1216; Lavery v. Commissioner, 7 Cir., 158 F.2d 859, and Hedrick v. Commissioner, 2 Cir., 154 F.2d 90, found that the income was not constructively received in 1943, and sustained the commissioner's determination.

Appealing from that decision, the taxpayer is here insisting that the Avery case has been misapplied, that it is not controlling here, but that our case of A. D. Saenger, Inc., v. Commissioner, 5 Cir., 84 F.2d 23, is, and that Hedrick v. Commissioner, 2 Cir., 154 F.2d 90, and Lavery v. Commissioner, 7 Cir., 158 F.2d 859, relied on by the Tax Court, are to the same

tain royalty rights. One of the companies paid its lump sum in full in 1943. The other company, Picker X-Ray Corporation, was to make its payment in installments, $7500 to be paid at the making of the agreement; $5000 on Jan. 5, 1944; and the remaining $10,000 on Jan. 5, 1945.

The agreement was made in 1943, and the initial payment was then made. On or about Dec. 20, 1943, the $5000, which was due Jan. 5, 1944, was paid.

Thereafter the following occurred with reference to the remaining $10,000. On Dec. 26th or 27th, petitioner's attorneys received a telephone call from the president of the corporation asking that it be allowed to anticipate the $10,000 payment due Jan. 5, 1945, so as to obtain the tax advantage of payment therefor in 1943. The attorney agreed to this arrangement and told Picker he would talk to petitioner and, unless he telephoned that day to tell him differently, payment would be accepted. Petitioner was then contacted and, at the suggestion of his attorney, agreed to accept payment.

On Dec. 30th or 31st, the attorney received from Picker a letter dated Dec. 29th, advising that a Mr. Reman in the New York office was out of town until after the first of the year and that he had "instructed Cleveland to issue a check in final payment which you can deposit any time this year or next year."

On receipt of this letter, the attorney advised petitioner by telephone that the check was on the way. The check was drawn on the Cleveland Trust Co. and was dated Dec. 30, 1943. It was received by mail by petitioner's attorney within a few days after receipt of the Dec. 29th letter from New York, but he could not state the exact date. Dec. 31st of 1943 was on Friday and the attorney's office was closed part of the day.

About three or four days after the attorney had received the check he advised petitioner of it and sent it over to him. Petitioner did not know when he could have expected the check to arrive nor did he remember the day he actually received it, except that it was early in Jan. of 1944, and that on Jan. 7, 1944, he deposited it in Jacksonville.

Petitioner's auditor computed his income tax for the year 1943, from information he received from office memoranda recording cash receipts made available to him by petitioner for that purpose. The $10,000 had been recorded by memorandum in 1944, and relying on the memorandum the auditor reported the $10,000 in 1944.

In petitioner's income tax return for 1943, a net income of $44,923.40 was listed. $40,236.10 of this was noted as income received on account of the patent suit, and that amount was regarded by the taxpayer as meeting the requirements of Sec. 107(b), I.R.C., so that in computing the tax, one-third of it was prorated to each of the years 1941, 1942, and 1943.

Respondent determining: that these amounts did not constitute 80 percent of the aggregate of the amounts received in those three years on account of the patent; that the $10,000 check issued in 1943 but deposited and returned as income in 1944, was not constructively received in 1943; that petitioner was therefore not entitled to pro rate his 1943 patent income over those years; and that a deficiency in tax of $8,317.57 existed for 1943; petitioner appealed to the Tax Court.

effect, as are the many other cases cited by him.[3]

Pressing upon us that the conception of "constructive receipt" may no longer be treated, as the commissioner has in the past endeavored to treat it, as a conception belonging to the commissioner alone to bind and to loose with, he insists that constructive receipt and payment are not correlative conceptions. Repudiating the contention attributed to him by the Tax Court, that the agreement that the payment was to be made constituted constructive payment, the petitioner, quoting from Ross v. Commissioner, 1 Cir., 169 F.2d 483, 490, 7 A.L.R. 2d 719;

> "The doctrine of constructive receipt treats as taxable income which is unqualifiedly subject to the demand of the taxpayer on a cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash.";

adopts this view as his own. Relying strongly on the declaration made in that case, that the doctrine is a rule for determining income, and neither the taxpayer nor the commissioner has any option or election as to whether it will be applied, he insists that if the income in question here was constructively received in 1943, neither the taxpayer nor commissioner has, or had any choice but to treat it as having been received in that taxable year.

Pointing out that the theory underlying the doctrine of constructive receipt is that the reduction of income to physical possession is not controlling where the income is subject without substantial limitation to the taxpayer's demand and at his election can be brought within his control, the petitioner urges that the action of the commissioner in whole and of the Tax Court in part is based upon the view that the doctrine of constructive receipt was designed to protect the revenue and is not available to the taxpayer. Asserting with confidence that the doctrine of constructive receipt is as available to the taxpayer as to

the commissioner, and quoting from the Ross case, "The doctrine does not merely afford a special choice which the commissioner may, if he sees fit, exercise retroactively against the taxpayer, but is a rule of law determining what constitutes taxable income, and, as such, presumedly binding on all parties", he goes on in his brief to say, "The Ross case elevated the doctrine of constructive receipt to a plane of mandatory rule binding upon both commissioner and taxpayer by holding that constructive receipt is a method of determining realization of income within the meaning of Sec. 42 of the Internal Revnue Code [26 U.S.C.A. § 42]."

We find ourselves in general agreement with the taxpayer's contentions as to the law of the case. We also see in the undisputed facts elements strongly supporting the taxpayer's claim that this is a proper case for the application of the doctrine he invokes. Two of these, and prime ones, are that the sum was not payable until 1945, and only by gaining the consent of the taxpayer could it have been paid before that time, and that consent was given by the taxpayer to receive the sum in 1943. It is undisputed, too, that the check was drawn and mailed in 1943. The only difficulty lies in determining whether what was in fact done to make it available to the taxpayer in 1943 had that effect in law.

If, in addition to being drawn in 1943, the check had been received by appellant in that year and there was an actual receipt of the payment, the question of constructive receipt would not arise. Upon the question at issue here, then, whether there was constructive receipt of the payment in 1943, the failure to receive the check in that year is, therefore, quite unimportant. Indeed, but for the single fact of geography, that the check was issued in Cleveland and the taxpayer lived in Florida, there could not be any doubt that there was constructive receipt. If, in short, taxpayer had lived in Cleveland or the payor had lived in Jacksonville, it could not have been contended that the payment was not

3. Ross v. Commissioner, 1 Cir., 169 F.2d 483, 7 A.L.R.2d 719; Weil v. Commissioner, 2 Cir., 173 F.2d 805; James E. Lewis, 30 B.T.A. 818; W. A. Sloper, 1 T.C. 746; John Rossi, 15 T.C. 1010.

made available to him. While upon the question of actual receipt of the payment, the geography in the case would be quite important, it is difficult to see how, upon the question of constructive receipt, i. e., the availability of the payment, the geography or distance is important in law.

In the state of the authorities, we think that, if, instead of returning the payment as income in 1944, the taxpayer had returned it as received in 1943, and the commissioner, instead of the taxpayer, was insisting that it was constructively received in that year, it would be quite difficult for the taxpayer to defeat the commissioner's claim. Does the fact that the taxpayer returned the payment as received in 1944, and the commissioner wishes to hold him to that return, change the legal result? We think not, for in this case, unlike in the case of Edward G. Swartz, Inc., v. Commissioner, 5 Cir., 69 F.2d 633, and Adler v. Commissioner, 5 Cir., 77 F.2d 733, there is no question of the statute of limitations, none of estoppel. It has been many times held that the taxpayer on a cash receipts and disbursements basis must return income as received in the year in which it is actually received or made available to him. When, therefore, all that is known with regard to checks is that, though issued in one year, they are received in another, no difficulty is presented, for the decisions are uniform that the mere fact that checks are issued in a year does not make them returnable as income in that year.

The distinguishing features of this case are the facts of the agreement and understanding, carefully and completely arrived at: that the indebtedness could be paid off in 1943; that the money would be available in that year; and that, pursuant to the agreement, the check was issued two days before the year's end. In view of the agreement and the understanding in the letter of the president of Picker Co., that he had "instructed Cleveland to issue a check in final payment, which you can deposit at any time this year or next year", it seems quite clear to us that if the shoe were on the other foot and the commissioner, instead of the taxpayer, was insisting that the money was constructively received in 1943, the taxpayer could not escape the insistence.

If this is so, it is equally clear that despite the taxpayer's mistake in returning the payment as received in 1944, the commissioner's insistence that it was not constructively received and cannot be returned in 1943, is equally unavailing to him.

The decision is reversed and the cause is remanded for further and not inconsistent proceedings.