**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Maurice FOX, Respondent.**

**No. 11346.**

United States Court of Appeals Third Circuit.

Argued Nov. 4, 1954.

Decided Dec. 30, 1954.

Davis W. Morton, Jr., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen.,

Hilbert P. Zarky, Ellis N. Slack, Sp. Assts. to Atty. Gen., Washington, D. C., on the brief), for petitioner.

Morris M. Schnitzer, Newark, N. J., for respondent.

Before BIGGS, Chief Judge, and MARIS and HARLAN, Circuit Judges.

BIGGS, Chief Judge.

The taxpayer, on a cash basis, owned investment shares in one hundred federal savings and loan associations scattered throughout the United States. The controversy concerns the proper year for the taxation of dividends of twenty-seven of these associations, all located outside New Jersey where the taxpayer had his residence. The associations declared year-end dividends payable on or before December 31, 1949. The taxpayer could have collected his dividends had he appeared on that day at the offices of the respective companies and had requested payment. Actually the dividends were mailed to his home by the associations and were received by him in January 1950.

The narrow question presented is whether the Commissioner, applying the rule of constructive receipt, correctly included the dividends in the taxpayer's gross income for the year 1949. The Commissioner relied on Section 42(a), 26 U.S.C.1946 ed.,[1] and Sections 29.-42–2 [2] and 29.42–3 [3] of Treasury Regulations 111. A majority of the Tax Court, three judges dissenting, concluded that the Commissioner erred in applying this doctrine. See 20 T.C. 1094.

[1.] Section 42(a), 26 U.S.C. 1946 ed., provided as the General Rule: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *"

[2.] Treasury Regulations 111, Section 29.42–2 stated: "*Income not Reduced to Possession.* Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt."

[3.] Treasury Regulations 111, Section 29.42–3, "*Examples of Constructive Receipt*" provided: "If interest coupons have matured and are payable, but have not been cashed, such interest, though not collected when due and payable, shall be included in gross income for the year during which the coupons mature, unless it can be shown that there are no funds available for payment of the interest during such year. The interest shall be included in gross income even though the coupons are exchanged for other property instead of eventually being cashed. The amount of the defaulted coupons is income for the year in which paid. Dividends on corporate stock are subject to tax when unqualifiedly made subject to the demand of the shareholder. *If a dividend is declared payable on December 31 and the corporation intended to and did follow its practice of paying the dividends by checks mailed so that the shareholders would not receive them until January of the following year, such dividends are not considered to have been unqualifiedly made subject to the demand of the shareholders prior to January, when the checks were actually received.* * * * Interest credited on savings bank deposits, even though the bank nominally has a rule, seldom or never enforced, that it may require so many days' notice before withdrawals are permitted, is income to the depositor when credited. An amount credited to shareholders of a building and loan association, when such credit passes without restriction to the shareholder, has a taxable status as income for the year of the credit. * * *" (Emphasis added.)

The Commissioner brought the case to this court.

Both the Commissioner and the taxpayer rely on Avery v. Commissioner of Internal Revenue, 1934, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216. It is obvious and the United States concedes that the portion of Section 29.42–3, Treasury Regulations 111, italicized in our footnote 3, supra, was written into that Section by the Treasury Department following the Avery decision and because of it. In the Avery case the taxpayer was a large stockholder and president of United States Gypsum Company. Annually, dividend checks, dated December 31st, on that day were mailed to all stockholders except those who were officers and employees, including the taxpayer. The dividend checks of officers and employees were held in the treasurer's office until the first day of the next month and then distributed through the office mail. It will be seen that the facts of the Avery case are very close to those of the case at bar. The United States, however, attempts to make a valid distinction between the cases by pointing out that in Avery Mr. Justice McReynolds stated, 292 U.S. at page 212, 54 S.Ct. at page 675, it " * * * was without exception that no stockholder, whether employee or officer, should receive his check before the first business day of the month following the month in which the dividend was made payable." He went on to say that " * * * there is nothing to show that [the taxpayer] could have obtained payment on December 31st * * *." See 292 U.S. at page 215, 54 S.Ct. at page 676. The Commissioner next points out that in the instant case the taxpayer could have received the dividends on December 31st by going to each of the widely separated company offices and demanding immediate payment. This, says the United States, is the distinction which must be made between the Avery case and that at bar and which compels a result in the Commissioner's favor.

The United States also relies on the opinion of Circuit Justice Frankfurter in Ross v. Commissioner of Internal Revenue, 1 Cir., 1948, 169 F.2d 483, 7 A.L.R. 2d 719, on Kunze v. Commissioner of Internal Revenue, 1952, 19 T.C. 29, affirmed per curiam, 2 Cir., 1953, 203 F.2d 957, on Loose v. United States, 8 Cir., 1934, 74 F.2d 147, and on McEuen v. Commissioner of Internal Revenue, 5 Cir., 1952, 196 F.2d 127.

In the Ross case the taxpayer was himself seeking to assert the doctrine of constructive receipt in an earlier year to defeat an attempt by the Commissioner to impose a tax in a later year upon the sum received. Circuit Justice Frankfurter pointed out that the talismanic word was "received", referring to Section 29.42–2 of the Treasury Regulations. It is true, as the United States points out, that Circuit Justice Frankfurter said, 169 F.2d at page 490: "The doctrine of constructive receipt treats as taxable income which is unqualifiedly subject to the demand of a taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash. * * * The doctrine has been incorporated in the Treasury Regulations from the beginning and is currently to be found in Regulations 111, § 29.42–2 * * *." The court, however, was not dealing with corporate dividends but with disputed items on an accrued salary which might have been payable to the taxpayer in a previous year.

In the Kunze case the taxpayer himself requested the corporation to mail his check to him and refused to accept delivery by any other method in order, apparently, to control the time of actual receipt by him. There was no fixed corporate policy or practice under which the corporation mailed all dividends to each of the stockholders without exception. It is clear, therefore, that by the taxpayer's own deliberate act he received the payments from the corporation in the following tax year.

In the Loose case bond coupons, not dividends, were involved and the taxpayer himself delayed in reducing them to cash. We refer to the terms of Section

29.42–3, Treasury Regulations 111, quoted in footnote 3. The decision that the bond coupons should be deemed to be income in the year in which they were due was in accord with the provisions of Section 29.42–3.

In the McEuen case the taxpayer had himself asserted, as in the Ross case, the doctrine of constructive receipt in order to make includible in his gross income in an earlier year a sum of money owed him in settlement of a contractual debt arising from a patent infringement controversy. Under the contract the sum was not payable until 1945. By renegotiation, the sum was to be paid to him in 1943. The check for payment was drawn December 30 and mailed and received by the taxpayer by mail, the exact date of receipt being indefinite. Nevertheless, the taxpayer controlled the time of the payment by his consent.

▇▇▇ Our difficulty in accepting the position of the United States lies in the fact that we think that the Commissioner has not demonstrated any substantial distinction between the facts of the instant case and those of Avery. Surely we may take judicial notice of the fact that it is common corporate practice, at least among large corporations, to mail dividend checks to the stockholders. Orderly business administration requires such a course. Confusion would result if the stockholders of any large corporation descended in a body on the treasurer's office and demanded forthwith payment of their dividends. In the instant case the savings and loan associations adopted the usual corporate practice. There was no attempt on the part of the taxpayer, as in the Kunze case, to delay or fix the time of payment to him. The payments in the instant case were made or occurred in the ordinary course of business.

Another reason which persuades us to rule in the taxpayer's favor is that the situation which confronted him seems embraced almost precisely in the example set out in Section 29.42–3 of Treasury Regulations 111 dealing with the payment of corporate dividends. That provision seems tailored to this case.

The line of reasoning followed by the Tax Court seems logical and has been consistently followed by it in cases such as that at bar. See Eldridge v. C. I. R., 1934, 30 B.T.A. 1322, affirmed 9 Cir., 1935, 79 F. 629; Harkness v. C. I. R., 1935, 31 B.T.A. 1100; Ardenghi v. C. I. R., 1938, 37 B.T.A. 345, and Rex v. C. I. R., 3 C.C.H. Tax Court Memorandum Decisions 1260, 1944. In the Rex decision a check in payment for the redemption of stock was to be mailed on December 28, 1940 but the taxpayer did not receive the payment before the year's end simply because of the geographical distance between him and the paying office. All of the decisions cited in this paragraph reject the application of the doctrine of constructive receipt under circumstances analogous to those of the case at bar.

The decision of the Tax Court will be affirmed.