CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION OF COVINGTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63099. Filed May 15, 1958.

*Lucien G. Strauss, Esq.,* and *Orville A. Troy, Esq.,* for the petitioner.

*David M. Robinson, Esq.,* for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in petitioner's income tax as follows:

| Year | Deficiency |
|---|---|
| 1952 | $5,168.52 |
| 1953 | 3,724.67 |

The sole issue is whether dividends in the amount of $29,695.95 declared by petitioner on its earnings for the 6-months' period ended December 31, 1951, were allowable as a deduction in 1952.

### FINDINGS OF FACT.

Most of the facts have been stipulated and the stipulation, together with the exhibits attached thereto, is made a part hereof by this reference.

Petitioner is a Federal savings and loan association with offices located in Covington, Kentucky. Its corporation income tax returns for

the years involved were filed on a calendar year basis with the director of internal revenue for the district of Kentucky. Petitioner was originally incorporated as a building and loan association under the laws of the State of Kentucky in March 1886. On January 12, 1935, it was converted to a Federal savings and loan association under the Home Owners Loan Act of 1933, under Charter E thereof. On March 8, 1937, the said Charter E was amended and the association was operated under the amended Charter, known as Charter K. The said Charter K was later amended under the aforesaid Act and was made applicable to the petitioner April 22, 1944, as amended. Paragraph 9 of Charter K as amended reads as follows:

9. Reserves, undivided profits, and dividends.—As of June 30 and December 31 of each year, after payment or provision for payment of all expenses and appropriate transfers to the reserve required below, and additional transfers to other reserve accounts, and provision for an undivided profits account, the board of directors shall declare as dividends the remainder of the net earnings of the association for the 6 months' period. All dividends shall be declared as of said dividend dates. The board of directors may declare dividends as of said dividend dates payable out of the amounts remaining from previous periods in the undivided profits account. Profits to holders of share accounts shall be termed dividends (except bonus payments) and shall not be referred to as interest. The association shall maintain the reserve required for insurance of accounts by sufficient credits on each dividend date. If and whenever the aggregate reserves of the association (less reserve for bonus) are not equal to 10 percent of the share capital, the association shall, at each dividend date, transfer to reserves (other than reserve for bonus) a credit equivalent to at least 5 per cent of the net earnings of the association, until such aggregate reserves are equal to 10 percent of the share capital. Any losses may be charged against reserves. Dividends upon investment share accounts shall be promptly paid in cash as of the dividend date. Dividends on savings share accounts shall be credited to such share accounts on the books of the association as of the dividend date. All holders of share accounts shall participate equally in dividends pro rata to the participation value of their share accounts; provided that the association shall not be required to credit dividends on inactive share accounts of $5 or less. Except as provided above, dividends shall be declared on the participation value of each share account at the beginning of the dividend period, plus the share payments made during the dividend period (less amounts repurchased and noticed for repurchase and, for dividend purposes, deducted from the latest previous share payments), computed at the dividend rate for the time invested, determined as provided below. The date of investment shall be the date of actual receipt of such share payments by the association, unless the board of directors fix a date, not later than the tenth of the month, for determining the date of investment of payments on either investment or savings share accounts or on both types of share accounts. Share payments, affected by such determination date, received by the association on or before such determination date, shall receive dividends as if invested on the first of such month. Share payments, affected by such determination date, received subsequent to such determination date, shall receive dividends as if invested on the first of the next succeeding month. All holders of share accounts shall be entitled to equal distribution of net assets, pro rata to the value of their share accounts, in the event of voluntary or involuntary liquidation, dissolution, or winding up of the association.

Petitioner has two types of shareholders to whom dividends are paid: (a) Investment shareholders to whom certificates in units of $100 are issued; and (b) running account shareholders to whom savings account books are given. The deposits and withdrawals of investment shareholders must be in units of $100 and the aforesaid certificates are issued and retired on the basis of such deposits or withdrawals. Dividends to these shareholders are paid directly to them by check. Running account shareholders may make deposits or withdrawals of any amounts to or from their accounts. These deposits and withdrawals are noted in the aforesaid savings account books on the dates when made and the balance after such withdrawals and deposits is immediately computed and placed in the said savings account books. Dividends to running account shareholders are credited on the individual shareholders' accounts on the books of the petitioner and the said credits are also credited on the individual savings account books of each of said shareholders when said books are presented to the petitioner. In cases where passbooks have been left in petitioner's custody, the dividends are credited in the savings account books simultaneously with the credit in the said individual shareholder account.

The minutes of the board of directors' meeting of petitioner held on November 27, 1951, contain a resolution concerning dividends which reads as follows:

Upon motion a semi-annual dividend at the rate of 3% per annum was declared as of December 31, 1951 payable to the shareholders of record as of that date in the same manner as the June 30, 1951 dividend was paid.

All dividend resolutions subsequent to June 19, 1940, including the December 1951 dividend resolution, referred to each preceding semi-annual dividend resolution, which each, in turn, ultimately referred back to the June 19, 1940, resolution. The resolution concerning dividends as passed on June 6 (*sic*), 1940, to which the November 27, 1951, resolution refers, is as follows:

Upon motion a semi-annual dividend of 1¾% was declared for the 6 months' period ending June 30, 1940 payable to shareholders of record as of that date, with the dividend on the Full Paid and Mortgage Loan Share Accounts being paid by check and with the dividend on the Savings Share Accounts being credited thereon. The Secretary was directed to mail the Full Paid dividend checks and to credit the mortgage share dividend checks on the mortgage loan accounts delinquent in either interest or dues.

The minutes of the board of directors' meeting of petitioner held on December 4, 1952, contain a resolution concerning dividends which is as follows:

Upon motion a semi-annual dividend at the rate of 3% per annum was declared as of December 31, 1952 payable to the shareholders of record as of that date in the same manner as the June 30, 1952 dividend was paid except that the said

dividend is to be made available for withdrawal on December 31, 1952 and that savings withdrawals made on that day will have no effect on the current dividend.

The dividend resolutions declaring a semiannual dividend on the 30th day of June of each year did not contain the words contained in the resolution of December 31, 1952, and thereafter, namely, the following words:

except that the said dividend is to be made available for withdrawal on December 31, 1952 and that savings withdrawals made on that date will have no effect on the current dividend.

On December 12, 1952, the Home Loan Bank Board, through the office of its supervisory agent in Cincinnati, Ohio, addressed to member savings and loan associations its written opinion concerning the withdrawal of credited dividends. This opinion is as follows:

To the Federal Association Addressed:

Since the Regulations of the Bureau of Internal Revenue provide that dividends are allowable as a deduction from gross income for the taxable year in which such dividends may be withdrawn by the savings account holder, the Home Loan Bank Board has considered and passed upon the following question:

May a Federal association on the last business day of the six months' accounting period distribute cash dividends and permit the withdrawal of dividends credited for that accounting period?

The Board has answered this question in the affirmative inasmuch as it considers all dividend and withdrawal transactions occurring on the last business day of the six months' accounting period as having taken place at the close of business on that day.

The following closely related question has also been considered by the Home Loan Bank Board:

May a Federal association pay dividends on savings withdrawn on the last business day of the dividend period?

The answer to this question is "Yes," for the reason stated above.

In view of the importance of this matter, we suggest that you confer with your counsel in deciding upon the method by which you advise your members and otherwise deal with the subject.

Yours very truly,

[sgd.]   J. W. Whittaker
J. W. WHITTAKER
*Supervisory Agent*

Petitioner maintained a general bank account and a special bank account, to which latter account funds were credited for the payment of semiannual dividends on investment shares only. For the semiannual dividend period ending December 31, 1951, petitioner made out a check on its regular bank account payable to its special dividend account. This check was deposited with the bank on January 2, 1952. This deposit was in the amount of $8,384.24, the full amount of the December 31, 1951, dividend payment to investment shareholders. Prior to the deposit, petitioner's balance in the special dividend account was $420.91.

The December 31, 1951, dividend payments to all investment shareholders, amounting to approximately 300 in number, were paid by printed checks bearing the date January 2, 1952. An investment shareholder received his dividends only by check drawn on the special dividend bank account and could not have cashed his dividend check for the period ended December 31, 1951, until January 2, 1952.

The funds for the total amount of the December 31, 1952, dividends, payable to investment shareholders of record as of that date, were transferred from petitioner's general bank account to its special dividend bank account on December 31, 1952. This deposit in the special dividend bank account was for the full amount of dividends paid by check to investment shareholders and was to cover the entire amount of such checks.

The December 31, 1952, dividend payments to investment shareholders, amounting to approximately 300 in number, were paid by printed checks bearing the date December 31, 1952. An investment shareholder could have cashed his December 1952 dividend check on December 31, 1952.

With respect to running account shareholders, petitioner's bookkeeper began to compute the December 31 dividend after the 10th of December of each year, including the year 1951. The dividend was computed on the balance in each savings account on the 10th of December and credited to the individual savings accounts from a week to 10 days before December 31. Dividends were not paid on any deposits made after December 10 of any year. In computing the half-yearly dividend which was payable December 31, 1951, petitioner would penalize any shareholder who made a withdrawal during the period from December 10 to and including December 31, 1951, by recomputing the dividend on the basis of the account balance less the amount of the withdrawal. Thus, the withdrawing shareholder lost the dividend on the amount withdrawn during this period. By means of this penalty, petitioner attempted to discourage withdrawals by shareholders on December 31 or on days immediately preceding December 31. Despite the penalty, some withdrawals were made by shareholders on December 31, 1951. In 1952, petitioner changed this procedure so that withdrawals on December 31 did not result in any loss of part of the dividend.

The petitioner had two basic sources of income: First, primarily from interest on outstanding mortgage loans; and secondly, from Government bonds which were all series F, United States Government bonds. The semiannual increase in value of the bonds was entered on the accounts of petitioner and received into earned income as the value of the bonds increased during the semiannual period. No interest was paid on the F bonds in cash. The ledger account entitled

"Interest on Bonds and Investments" with reference to the aforesaid type of interest on F bonds only, set forth the notation "F Accrued Interest for Six Months" in posting the increase in the value of the bonds. The semiannual increase in value of the F bonds is not equal during their 12-year existence, the semiannual values in the later years being greater than in the earlier years of the existence of the bond.

Any other income was entered on the accounts as it was actually received in cash during the year and became a part of the earned income of the petitioner for that year as it was received.

There was no deferred income, as such, on the books of the petitioner from and including December 31, 1951, and thereafter. The profit and loss account of the petitioner company reflected only cash income other than the increase in value of the F bonds.

All expenses appearing in the profit and loss account for each semiannual period were entered as expenses only when paid. No deferred expenses were carried on the books at the end of the semiannual periods in question.

Salary deductions such as social security, retirements, and withholding taxes were entered on the accounts at the end of each month when salaries were paid and accumulated for a month or a 3-month period and then checks were drawn therefor and the accounts closed at the end of each period.

Treasury Forms 1099 mailed by petitioner to the Internal Revenue Service for the calendar year 1951, showed the December 31, 1951, dividends as having been paid to shareholders in 1951.

In a statement of condition published in a local newspaper on January 7, 1952, pursuant to section 145.23 of the Rules and Regulations for the Federal Savings and Loan System, petitioner set forth the following:

STATEMENT OF CONDITION AS OF DECEMBER 31, 1951

| Assets | | Liabilities | |
|---|---|---|---|
| First Mortgage Loans and Other First Liens on Real Estate | $2,012,751.78 | Savings Accounts | $2,017,585.82 |
| Real Estate Owned and in Judgment | 150.00 | Shares Pledged on Mortgage Accounts | 371.45 |
| Investments and Securities | 623,745.00 | Advances from Federal Home Loan Bank | 200,000.00 |
| Cash on Hand and in Banks | 93,643.60 | Dividends Declared and Unpaid (No. 132 at rate of 3% per annum) | 29,695.95 |
| Furniture and Fixtures, Less Depreciation | 1.00 | Loans in Process | 48,456.34 |
| | | Other Liabilities | 141.66 |
| | | Specific Reserves | 577.57 |
| Total | $2,730,291.38 | General Reserves $304,731.75 Surplus 128,730.84 | 433,462.59 |
| | | Total | $2,730,291.38 |

On its income tax return for 1952, petitioner reported a net loss of $12,415.56. On its income tax return for 1953, petitioner reported net income of $20,404.70, from which amount was subtracted a net operating loss deduction of $12,415.56 from 1952. Respondent disallowed the dividend deduction of $29,695.95 claimed by petitioner on its tax return for 1952, and the net operating loss carryover deduction claimed by petitioner on its tax return for 1953.

On its returns filed for 1952 and 1953, petitioner stated the returns were prepared on a cash basis. Petitioner maintained its books and records on a cash basis during the taxable years 1952 and 1953. Petitioner likewise maintained its books and records on a cash basis during the calendar year 1951.

#### OPINION.

Respondent determined that dividends in the amount of $29,695.95 declared by petitioner on its earnings for the 6-months' period ended December 31, 1951, "do(es) not constitute an allowable deduction in 1952 within the purview of section 23 (r) of the Internal Revenue Code of 1939"; and that it therefore "did not incur a net operating loss in 1953." The sole issue is whether such dividends were deductible by petitioner from its gross income in the year 1952.

Federal savings and loan associations were first made subject to corporate income tax in the case of taxable years beginning after December 31, 1951. Section 313, Revenue Act of 1951.

Section 23 (r) (1) of the Internal Revenue Code of 1939, as amended by section 313 (f) of the Revenue Act of 1951 and made applicable only to taxable years beginning after December 31, 1951 (*ibid.*, sec. 313 (j)), provides that in computing net income there shall be allowed as deductions from gross income:

(r) DIVIDENDS PAID BY BANKING CORPORATION.—

(1) In the case of mutual savings banks, cooperative banks, and domestic building and loan associations, amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends on their deposits or withdrawable accounts, if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw.

The term "domestic building and loan association" is defined to include a Federal savings and loan association. Section 3797 (a) (19) of the Internal Revenue Code of 1939, as amended by section 313 (i) of the Revenue Act of 1951.

Petitioner's position is that it was on a cash basis of accounting in 1951 and in 1952 and that no shareholder of petitioner could demand and obtain payment of the December 31, 1951, dividend until after the close of business on December 31, 1951, which meant that such dividend was not "withdrawable on demand" until January 2, 1952, the first business day of the following year, and accordingly that the

dividend of December 31, 1951, constituted an allowable deduction in 1952 within the purview of section 23 (r) of the Internal Revenue Code of 1939, as amended.

Respondent contends, however, that petitioner was on an accrual basis of accounting in 1951 and that the dividends in question had been fully accrued in that year; accordingly that the dividends did not constitute an allowable deduction in 1952 within the meaning of section 23 (r) of the Internal Revenue Code of 1939, as amended, regardless of the method of accounting employed by petitioner in 1952.

We do not agree entirely with either petitioner or respondent. Considering the two types of shareholders to whom the dividends were payable, it is our opinion that the dividends *paid* to the investment shareholders in 1952 are deductible in 1952, but that the dividends *credited* to the savings account shareholders as of December 31, 1951, are not deductible in 1952.

At the outset, it should be borne in mind that we are not here concerned with the question as to when the dividends paid or credited to the shareholders or depositors are taxable to them, such as was involved in the cases of *Maurice Fox*, 20 T. C. 1094, affd. 218 F. 2d 347, and *Avery* v. *Commissioner*, 292 U. S. 210. "Constructive payment" is not a necessary corollary of "constructive receipt." *Vander Poel, Francis & Co.*, 8 T. C. 407. What may be income to the one, may not be a deductible payment by the other. Cf. *Jenkins* v. *Bitgood*, 101 F. 2d 17, certiorari denied 307 U. S. 636, rehearing denied 308 U. S. 638; 2 Mertens, Law of Federal Income Taxation, sec. 10.18.

Charter K of the Home Owners Loan Act of 1933, as amended, under which petitioner operated, provided for semiannual disbursements out of the net earnings of the association, one as of June 30 and one as of December 31 of each year. It further provided that dividends upon investment share accounts "shall be promptly paid in cash as of the dividend date," and that dividends on savings share accounts "shall be credited to such share accounts on the books of the association as of the dividend date." The dividends involved herein are those declared by petitioner as of December 31, 1951, out of its earnings for the 6-months' period ended December 31, 1951. Of the total $29,695.95 dividend thus declared, $8,384.24 was payable upon investment share accounts and the balance, or $21,311.71, was payable on savings share accounts. The pro rata portion due each shareholder or depositor was computed on or after December 10, 1951, and, prior to December 31, 1951, the amount due each individual savings account shareholder or depositor was credited to the account maintained by petitioner for each such shareholder or depositor as of December 31, 1951, and where the passbook of such shareholder or depositor was left with petitioner, or subsequently brought in, it was also credited on such passbook as of

December 31, 1951. The $21,311.71 thus credited to the savings account shareholders or depositors does not include any amounts withheld by petitioner from the accounts of such shareholders or depositors because of withdrawals on or before December 31, 1951. Thus, the $21,311.71 so credited became a part of and was incorporated within the accounts of the savings account shareholders or depositors not later than the close of business on December 31, 1951, and within the calendar year 1951.

Section 23 (r) of the Internal Revenue Code of 1939, as amended, was made applicable to taxable years beginning after December 31, 1951. The condition therein that amounts paid or credited as dividends shall be allowed as a deduction from gross income if such amounts paid or credited "are withdrawable on demand" is therefore not applicable to amounts paid or credited as dividends prior to January 1, 1952. Accordingly, we hold that as to the $21,311.71 credited as dividends to the accounts of the savings account shareholders or depositors as of December 31, 1951, no amount thereof is deductible from the gross income of the petitioner for the taxable year 1952.

A different result is required, however, with respect to the $8,384.24 in dividends allocable to the investment account shareholders. Deposits and withdrawals by investment account shareholders were required to be made in units of $100, for which certificates were issued or retired as the case might be. Dividends to investment shareholders were paid directly to them by check and were not, as in the case of savings account shareholders or depositors, credited to their accounts for incorporation therein. Prior to the December 31, 1952, dividend, it had consistently been petitioner's practice when declaring dividends for the 6-months' period ended December 31, to direct that the dividends payable to its investment account shareholders be paid by checks dated as of the first business day of the following year. The amounts of the dividends to be disbursed to each of the investment account shareholders for the 6-months' period ended December 31, 1951, were computed on or after December 10, 1951, and recorded, when computed, on the accounts maintained by petitioner for each such shareholder. Payment, however, of the December 31, 1951, dividend to the investment account shareholders was made by checks dated and mailed January 2, 1952. Accordingly, the $8,384.24 in dividends declared by petitioner as of December 31, 1951, and paid to its investment account shareholders on January 2, 1952, are deductible from petitioner's gross income for the taxable year 1952, unless, as contended by respondent, petitioner was on an accrual basis of accounting and accrued such dividends in the year 1951. We have found as a fact, however, that petitioner was on a cash basis

during the calendar year 1951. In so finding we have given careful consideration to all the evidence, including the stipulated facts, Treasury Forms 1099 showing the dividends as having been paid to shareholders in 1951, and the statement of condition published by petitioner in the newspapers on January 7, 1952.

The parties stipulated, among other things, that other than the semi-annual increase in value of the United States Government F bonds owned by it (which cash basis taxpayers are permitted to report as income (Regs. 118, sec. 39.42–6)), all income of the petitioner was entered on its accounts as it was actually received during the year and became a part of the earned income of petitioner for that year; that expenses were entered only when paid; and no deferred income or expenses, as such, were carried on its books or reflected in the profit and loss accounts. These facts indicate a cash basis and not an accrual basis of accounting. We have not overlooked the testimony, on cross-examination, by petitioner's secretary that petitioner was on a "mixed basis" of accounting prior to 1951 and that it maintained certain accounts, variously denominated, in which were reflected the unused portion of its retirement fund, prepaid insurance, "interest paid ahead," and monthly computations of interest on mortgage loans. Petitioner's secretary testified that it kept such records for its own purposes (being then exempt from tax), and to comply with audit requirements of the Federal Home Loan Bank Board.

It has been held by this and other courts that the fact that a tax-payer's books, records, and accounting method meet requirements of other Federal or State agencies does not bind the Commissioner, who may independently determine whether they "clearly reflect income." *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552; *Pennsylvania Electric Co.* v. *Commissioner*, (Ct. Cl.) 135 F. Supp. 416; *Gulf Power Co.*, 10 T. C. 852; *National Airlines, Inc.*, 9 T. C. 159; *Seas Shipping Co.*, 1 T. C. 30. See also Rev. Rul. 54–83, 1954–1 C. B. 288. There would seem to be no more reason for holding that compliance with the rules and regulations of the Federal Savings and Loan System is determinative of petitioner's method of accounting for income tax purposes. Notwithstanding such compliance we think that the over-all evidence herein established that petitioner was on a cash basis rather than an accrual basis of accounting in 1951.

Nor do we think that the allowance of the deduction in 1952 constitutes an unreasonable distortion of income herein as contended by respondent. Cf. Rev. Rul. 55–703, 1955–2 C. B. 274, where a similar situation existed with respect to the years 1953 and 1954.

Finally, the fact that petitioner mailed Forms 1099 mistakenly showing the December 31, 1951, dividend as having been paid in 1951, and that some of petitioner's shareholders reported such divi-

dends as income taxable to them in 1951, is not controlling. Cf. *Cox Motor Sales Co.*, 42 B. T. A. 192, wherein the corporate taxpayer, on an accrual basis, declared a dividend of its annual net profits in December 1936 and credited it on its books, but for various reasons found it impossible to determine its profits precisely until the following January. It was held that the credit did not constitute payment of the dividend in the prior year within the meaning of section 27 of the Revenue Act of 1936; and further, that it was immaterial whether the taxpayer's shareholders had constructively received the dividend in the prior year for tax purposes.

Considering all the evidence herein, we hold that the $8,384.24 paid as dividends to the investment account shareholders on January 2, 1952, is deductible from the gross income of the petitioner for the taxable year 1952.

The amount of net operating loss deduction, if any, to which petitioner may be entitled will be determined under Rule 50.

*Decision will be entered under Rule 50.*