OPINION. HaRRon, Judge: Respondent, under section 23(r) (1), 1939 Code,[1] allowed petitioner a deduction in 1952 for its December 31, 1952, dividends of $105,301.64, but he disallowed a deduction in 1952 for the December 31, 1951, dividends of $71,799.91. The first question is whether all or part of the December 31, 1951, dividends were not withdrawable on demand, subject only to customary notice to withdraw, prior to January 2, 1952. If this question is decided for petitioner, respondent, in the alternative, contends that the December 31,1952, dividends were not withdrawable on demand before January 2,1953, and that, therefore, those dividends are not deductible in 1952, and, therefore, he erred in allowing deduction for them in 1952. Upon consideration of the entire record, it is concluded that under section 23 (r) (1), both the December 31, 1951, and the December 31, 1952, dividends are deductible in 1952. Viewing the record as a whole, it is concluded that on December 31, 1951, the shareholders of the petitioner could not demand and obtain payment of the dividend declared by its board of directors to be “paid and/or credited” as of that date. In accordance with the well established practice and policy of the petitioner, the dividend was considered to be payable as of the close of the business period which, under the instant circumstances, was midnight on December 31, 1951. Accordingly, the December 31, 1951, dividend was not withdrawable on demand of the shareholders until the first business day of the succeeding year which would have been January 2,1952. Kegulations 111, section 29.23 (r)(l), provide, inter alia, that amounts credited as dividends as of the last day of the taxable year which are not withdrawable by depositors or holders of accounts until the business day next succeeding are deductible under section 23 (r) (1) in the year subsequent to the taxable year in which they were credited. In view of the applicable statute and regulations, the date upon which the dividends can be demanded and withdrawn, regardless of the date upon which the dividends are credited or paid, determines the taxable year in which the dividends are deductible. Thus, the year in which the dividends are deductible depends solely upon the factual finding of when the dividends were withdrawable on demand by the petitioner’s shareholders. The facts in evidence indicate that the December 31,1951, dividend of the petitioner was declared to be paid and/or credited as of December 31, 1951. The amount was computed as to individual amounts payable. The dividend checks were prepared and dated December 31, 1951, for payment of the dividend in accordance with the usual procedure on investment shares, and the postings made crediting the general ledger control and subsidiary ledger accounts. In general, all preparations were made for payment of the dividend for the 6-month period ending December 31, 1951, to the investment and savings shareholders. However, the December 31,1951, dividend was not made available to the petitioner’s shareholders or subject to their withdrawal until on or after January 1,1952. This was in accordance with a long-existing policy of the petitioner since the dividend was a distribution of earnings for the prior 6-month periods, and those earnings were not complete until midnight of December 31, 1951. This practice was not inconsistent with the provisions of section 9 of petitioner’s Charter K. The checks in payment of the proportionate part of the dividend for the 6-month period ended December 31,1951, were dated December 31,1951, and considered to be payable as of midnight on December 31, 1951. In the instance of the dividends payable to savings shareholders the accounts of the shareholders were credited as of December 31, 1951. Contra, however, the dividend check was not made available to the investment shareholder until the first business day during January 1952, when the dividend checks were deposited in the mail. See Avery v. Commissioner, 292 U.S. 210. In the instance of the savings shareholders, the dividends were not available and subject to withdrawal until on or after the first business day of 1952, when the savings depositor brought his passbook into the petitioner and had the dividend credit entered on the passbook. The evidential facts on this point are uncontroverted. The evidence is conclusive that under no circumstances would the petitioner pay the respective dividend to either an investment or savings shareholder on December 31,1951, or any prior dividend date. In fact, the petitioner’s officers stated in their testimony that if either category of shareholder had demanded or requested payment on December 31, 1951, payment would have been refused. The record contains documentary evidence to corroborate this testimony of petitioner’s officers. In answer to the inquiries during the year 1951 of the prospective depositors relative to the dividend payment policy of the petitioner, the prospective depositor was advised that the petitioner paid dividends on July 1 and January 1 of each year for the periods ending June 30 and December 31 of each year. In Citizens Federal Savings & Loan Assn. of Covington, 30 T.C. 285, 293, in which the Commissioner has acquiesced, 1958-2 C.B. 4, we held that dividends of December 31, 1951, to investment shareholders were deductible in 1952, but that the December 31, 1951, dividends to savings shareholders were not deductible in 1952. With respect to petitioner’s December 31,1951, dividends to its savings shareholders this case is distinguishable on its facts from the Citizens Federal case. There, if a savings shareholder presented his passbook on December 31, 1951, he received credit therein for the dividend. In this case, the evidence shows that the savings shareholders’ dividends for the last 6 months of 1951 were not withdrawable on demand before January 2,1952. It is held that all of the dividends for the last 6 months of 1951 in the amount of $71,799.91 are deductible in 1952. There remains for consideration respondent’s alternative contention relating to the dividends of $105,316.04 for the last 6 months of 1952. The facts are indisputable and stand entirely uncontroverted that the December 31, 1952, dividend was made available for withdrawal on demand by both classes of shareholders at 9 a.m. on December 31, 1952. The specific resolntion of the petitioner’s directors declaring the December 31, 1952, dividend specifically stated that the dividend was payable as of the opening of business on December 31,1952. Not only was the dividend made available on that date at the opening of petitioner’s business at 9 a.m., but dividends were actually paid to both investment and savings shareholders on December 31,1952. The checks for the dividend on investment shares were held at petitioner’s place of business until the 3 p.m. closing time, and were issued to any investment shareholder who made demand. The checks were then mailed. The evidence shows that at least five dividend checks were issued on December 31, 1952. One check in the amount of $500 was actually issued and cashed by the shareholder at the petitioner’s office on December 31, 1952. Also, four other dividend checks were requested by investment shareholders, were issued, and were cashed elsewhere on December 31, 1952. The dividends on savings were also paid on December 31, 1952, to the shareholders who sent or brought their passbooks to the petitioner for entry of the dividend credit and the withdrawal charge. The facts stand uncontroverted that the December 31, 1952, dividends on both the investment and savings shares were available and withdrawable by the shareholders on December 31, 1952. It is held that the December 31, 1952, dividends are deductible under section 23 (r) (1) in the taxable year 1952. Upon the evidence in this case, it has been concluded that the dividends for the last 6 months of 1951 were not withdrawable on demand, for the purpose of section 23 (r), until January 2, 1952, and that the dividends for the last 6 months of 1952 were withdrawable on demand on December 31,1952. The holding that deduction for both amounts is allowable in 1952 under section 23 (r) is in accord with Rev. Rul. 55-703,1955-2 C.B. 274. Decision will be entered for petitioner. SEC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net income there shall be allowed as deductions : [[Image here]] (r) Dividends Paid by Banking Cokpokations.— i(l) In the case of mutual savings bants, cooperative banks, and domestic building and loan associations, amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends on their deposits or withdrawable accounts, if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw.