# 1244

FIRST NATIONAL BANK OF BRADDOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89268. Promulgated November 25, 1938.

*Samuel Kaufman, Esq.*, for the petitioner.
*Loren P. Oakes, Esq.*, for the respondent.

## OPINION.

HILL: Respondent determined a deficiency in petitioner's income tax liability for the year 1934 in the amount of $1,887.56, and a deficiency in excess profits tax liability for the same year in the amount of $681.46. These deficiencies result from three adjustments made by respondent to the net income reported on petitioner's return, only two of which are called in question here. Petitioner assigns as error the action of respondent in disallowing (1) a deduction of Federal deposit insurance premiums in the amount of $2,066.52, and (2) a deduction of accrued interest on savings deposits in the amount of $11,661.25.

Petitioner is a national bank corporation, with its principal office at Braddock, Pennsylvania. It was incorporated December 8, 1933, and commenced business on the same date. On December 22, 1933, petitioner remitted to the Federal Deposit Insurance Corporation, to be subsequently paid into the temporary deposit insurance fund, the sum of $2,066.52. The amount was recorded on petitioner's books in a separate account and treated as an asset until December 22, 1934. The Federal deposit insurance did not become operative until January 1, 1934. Prior to that date, petitioner had no deposit insurance protection. Petitioner's total payments to the fund established by the Federal Deposit Insurance Corporation were not finally determined and made until November 1934, and thereafter all of such pay-

ments were charged to expense on December 22, 1934. The amount of the remittance made on December 22, 1933, was claimed by petitioner as a deduction from its gross income for 1934, and was disallowed by respondent.

On January 2, 1935, petitioner credited to the savings accounts of depositors interest earned for the period July 1 to December 31, 1934, in the amount of $11,661.25. Such interest was at intervals in 1934 computed and recorded by petitioner in an account called "accrued interest" and charged against 1934 operations. It was not available for credit to or withdrawal by the depositors prior to January 2, 1935. The amount so credited to the depositors was claimed as a deduction from gross income for 1934. The deduction was disallowed by respondent.

During the taxable year 1934 petitioner kept its books of account on the basis of cash receipts and disbursements, and for such year made its Federal income and profits tax return on the same basis.

Respondent contends that, since petitioner was on a cash basis and neither of the claimed deductions represents payment made in the taxable year 1934, both must be disallowed. Respondent argues in his brief that petitioner made its return on a cash basis; and that, since the deficiencies were determined by respondent on a cash basis, pursuant to the discretion vested in him by section 41 of the Revenue Act of 1934, and petitioner has not shown abuse of discretion, such determination is final. This argument in large part, we think, is not directed to the point in controversy. Petitioner readily concedes, and we so find as a fact, that it kept its books and made its tax return on the basis of cash receipts and disbursements. Petitioner contends, nevertheless, that it is entitled to the deductions claimed; that the allowance of such deductions is not inconsistent with the cash basis of reporting taxable income.

Respondent disallowed the deduction ₁of the deposit insurance premium in the amount of $2,066.52 because, he asserts, it was paid on December 22, 1933, prior to the beginning of the taxable year. There is no disagreement over the amount, or that it is an allowable deduction. In the deficiency letter respondent held that such amount was an allowable deduction for 1933.

The Federal Deposit Insurance Corporation was created by section 8 of the Banking Act of 1933, enacted June 16, 1933, 48 Stat. 162, 168, amending the Federal Reserve Act as amended, by inserting therein sections 12A and 12B. Subdivision (y) of section 12B provided that the Federal Deposit Insurance Corporation should open on its books a "Temporary Federal Deposit Insurance Fund" which should become operative on January 1, 1934. Each member of the fund was required, on or before the date of its admission, to file with the

corporation a certified statement of deposits and to pay into such fund a certain percentage of the deposits certified. Thus, it was necessary for petitioner to comply with the statutory provisions not later than January 1, 1934, if it was to become a member and have the benefits of the temporary insurance fund when it became operative. The making of such payment alone, however, did not constitute petitioner a member. There were other requirements, and, if its application for membership had been rejected by the Federal Deposit Insurance Corporation, the advance payment would have been refunded. Petitioner set up the amount remitted in December 1933 in an asset account on its books and thereafter, when the payment became final in 1934, charged such amount to expense.

This procedure, we think, was proper. Disregarding the contingency whereby the amount originally remitted, or a part thereof, might have been returned to petitioner subsequent to January 1, 1934, it seems plain that prior to that date it could not be said that such amount had been "paid" by petitioner either into the temporary fund or to the Federal Deposit Insurance Corporation. The temporary fund, by specific statutory provision, did not go into operation until January 1, 1934. Prior thereto, the amount remitted by petitioner to the insurance corporation was still its property; the insurance corporation merely held the money for petitioner until paid into the temporary fund when it came into operation on January 1, 1934. Undoubtedly petitioner had the right to demand the return of its money at any time before that date if it had so desired; and before such date the Federal Deposit Insurance Corporation had no property right in the money and could not have used it for any purpose. The money ceased to be petitioner's property only when it was paid into the temporary insurance fund, the purpose for which it was specifically remitted by petitioner, on or after January 1, 1934. It follows, therefore, that "payment" of the amount was made by petitioner within the taxable year 1934, and is an allowable deduction from gross income for that year.

The second deduction claimed by petitioner and disallowed by respondent involves interest earned on the savings accounts of its depositors during the period July 1 to December 31, 1934, in the amount of $11,661.25. The amount was computed at intervals during 1934 and recorded on petitioner's books during 1934 in an account designated "accrued interest." The amounts due the respective depositors, however, were not entered in their accounts until January 2, 1935, or if the entries were made prior thereto, they were made as of that date. Respondent makes no contention that the aggregate amount so credited is not an allowable deduction, but asserts that it

is deductible from 1935 income because petitioner was on the cash basis and credited the amount to its depositors in the latter year.

There is some conflict in the evidence respecting the actual date on which the entries were made crediting the interest in controversy on the accounts of the respective depositors. Both petitioner and respondent have requested that we find as a fact that the entries were made on January 2, 1935, or not until that date. Thomas M. Watt, a witness for petitioner and its cashier, testified that the interest was actually credited on the depositors' accounts on January 2, 1935. Yet this same witness also stated that the interest was computed about ten days to two weeks prior to January 2, 1935; that each account was "figured" individually and the various amounts added together, after which the amounts were posted to the individual accounts; that "in this case" this was probably done around the 29th or 30th of December 1934, but in any event prior to December 31, 1934, *as of January 2, 1935.*

Whatever may be the fact as to the date on which the credit entries were actually made on the depositors' accounts, it seems clear that the entries were made *as of January 2, 1935,* and that the interest so credited was not as a matter of right subject to withdrawal by the depositors, or, if not withdrawn, did not become a part of the principal of the depositors' accounts and begin to draw interest prior to January 2, 1935. We conclude that this fact is established by the record, notwithstanding the witness Watt testified that if a depositor wanted his interest on December 30 or 31, he could withdraw it. This was optional with the bank, and was merely permitted by the officers.

The rules and regulations governing savings accounts with the petitioner bank provided that interest would be allowed at a rate fixed by the board of directors, subject to change at their discretion, and would be credited on the regular half-yearly interest crediting dates as fixed by the board of directors. On January 2, 1934, the board of directors adopted a resolution providing "that the time of paying interest on the savings accounts be fixed as January 1 and July 1." The interest in question was not credited on or as of January 1, 1935, because the bank was not open for business on that date, which is a legal holiday in Pennsylvania.

Since the interest in controversy was neither paid by petitioner, nor made available to the depositors for credit or withdrawal, during the taxable year 1934, petitioner on the cash basis is not entitled to deduct the amount from its gross income for that year. Respondent's determination on this point is approved.

*Judgment will be entered under Rule 50.*