The BUCKEYE SAVINGS AND LOAN COMPANY

v.

The UNITED STATES.

No. 415–59.

United States Court of Claims.

Feb. 6, 1963.

Numa L. Smith, Jr., and John M. Bixler, Washington, D. C., for plaintiff. Miller & Chevalier, Washington, D. C., was on the brief.

Earl Huntington, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, Philip R. Miller and John F. Palmer, Washington, D. C., were on the brief.

JONES, Chief Judge.

This is a suit for the refund of income taxes in the aggregate sum of $43,-040.08, which plaintiff claims as an overpayment of income taxes paid by it for the calendar years 1954 through 1957.

The plaintiff is a domestic building and loan association which was chartered under the laws of the State of Ohio in 1890. It is subject to regulation under Ohio law and to supervision by Ohio State authorities. The plaintiff is a member of the Federal Home Loan Bank System.

Prior to the enactment of the Revenue Act of 1951, which became effective as of January 1, 1952, building and loan associations were exempt from Federal income taxes.[1] This act removed the exemption and made these associations subject to income tax, but in doing so included section 313 which is practically the same provision as section 593 of the Internal Revenue Code of 1954 (26 U. S.C. § 593 (1958)).[2] This section grants

---

[1]. Ch. 521, § 313, 65 Stat. 452, 490. Subsections (a) and (b) repeal section 101 (2), (4) of the Internal Revenue Act of 1939 (relating to exemption from tax of mutual savings banks, building and loan associations, and cooperative banks). Subsection (e) contains the formula now appearing as section 593 of the 1954 Code, appearing as an amendment of section 23(k) (1) of the former Code (relating to deduction from gross income of bad debts).

[2]. "§ 593. Additions to reserve for bad debts.

"In the case of a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, and a cooperative bank without capital stock organized and operated for mutual purposes and without profit, the reasonable addition to a reserve for bad debts under section 166(c) shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under

liberal bad debt deductions to domestic building and loan associations. This special concession was apparently extended to these previously tax-exempt institutions in order to afford them an opportunity to make adequate provision against possible losses.

Under another provision of the 1954 Code, section 166 (26 U.S.C. § 166 (1958)), which is of general application, a taxpayer may deduct any debt which becomes worthless within the taxable year, or, in the alternative, it may deduct a "reasonable addition" to a reserve for bad debts, as determined by the Secretary or his delegate.[3]

Section 593 provides that this "reasonable addition" to a reserve for bad debts under section 166(c), in the case of savings institutions of the type named therein, shall be determined with due regard to the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951.

Section 593 also confers upon a savings institution the right to determine for itself a reasonable addition for the taxable year, so long as such amount determined by it does not exceed the amount derived from the following formula:

> "(2) the amount by which 12 percent of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year."

In 1955 plaintiff paid Federal income taxes for 1954 in the amount of $116,455; in 1956 it paid $126,899 for 1955, and in 1957, $133,059 for 1956. Being a cash basis taxpayer, it did not show these sums as accrued liabilities on its year-end statements for the respective years in which they were accrued.

Plaintiff claimed, under section 593, in its income tax returns for each of the years 1954 through 1957 additions to its reserve for bad debts in the amounts of $12,509.55, $21,046.88, $20,847.75, and $20,423.39, respectively. The Commissioner of Internal Revenue disallowed all of these claims and assessed deficiencies in the amount of $43,040.08, which plaintiff paid. After its claims for refunds were rejected, plaintiff brought this suit.

The issue before us is whether all or a part of these additions to plaintiff's bad debt reserves are allowable as deductions from its taxable income under the formula of section 593, or, if not so allowable, whether, in the alternative, they should nevertheless be allowed under the broad discretionary authority given the Secretary or his delegate in section 166 (c) of the 1954 Code. The question of additions under the formula of section 593, in the posture the case has assumed before us, depends upon the amount of plaintiff's "surplus, undivided profits, and reserves" on January 1 of each of the respective years at issue. The pertinent Treasury regulation provides that "surplus, undivided profits, and reserves" is the amount by which total assets exceed total liabilities and perma-

---

this sentence shall not be greater than the lesser of—
> "(1) the amount of its taxable income for the taxable year, computed without regard to this section, or
> "(2) the amount by which 12 percent of the total deposits or. withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year."

3. "§ 166. Bad debts.
   "(a) General rule.—
   "(1) Wholly worthless debts.—
   "There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
     *   *   *   *   *
   "(c) Reserve for bad debts.—
   "In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

nent nonwithdrawable paid-in capital stock.[4]

In its operations plaintiff had issued $800,000 par value in withdrawable shares, of which $400,000 par value was paid for with cash and $400,000 par value was issued as a dividend declared on May 8, 1950, to holders of withdrawable shares of record on that date. These stock issues are not involved here. While taking a somewhat broader position in its brief, the defendant conceded in oral argument that these stock issues are no longer in issue.

In December 1951 the plaintiff issued $400,000 par value in permanent nonwithdrawable stock. This was issued as a stock dividend declared on December 17, 1951, to holders of withdrawable shares of record on December 15, 1951.[5] This dividend was declared while savings and loan associations were still untaxable and before the law in question went into effect.

Plaintiff contends that its $400,000 par value permanent nonwithdrawable capital stock issued as a stock dividend is not a part of surplus, undivided profits, and reserves. It also contends that the amount of its accrued Federal income taxes on December 31 of each year should be deducted from its surplus account on January 1 of the subsequent year for the purpose of determining tax-free additions to its bad debt reserve during that year under the formula of section 593.

As shown in Column H of Table I, herein, plaintiff is entitled to all of the deductions taken during the years at issue if it is correct in its contention that both its $400,000 par value nonwithdrawable capital stock issued as a stock dividend and its accrued income taxes were not a part of its surplus, undivided profits, and reserves on January 1 of each of the respective years. On the other hand, if it is correct only in respect to its $400,000 par value nonwithdrawable capital stock, it is entitled to its additions for the years 1954 through 1956, but not for the year 1957, as shown in Column K of Table I. Defendant takes the position that both the $400,000 par value nonwithdrawable capital stock and the accrued taxes were a part of surplus, undivided profits, and reserves and that, as a consequence, under the formula of section 593, plaintiff is entitled to no additions to its reserves during the years in question, as shown in Column G of Table II.

Alternatively, if found not to be entitled to additions to its bad debt reserve under the formula of section 593, plain-

---

4. Treas.Reg. § 1.593–1(d) (2) (1956), which reads as follows:

"(2) Surplus, undivided profits, and reserves.

"(i) The phrase 'surplus, undivided profits, and reserves' means the amount by which the total assets of an institution exceed the amount of the total liabilities of such an institution.

"(ii) For this purpose the term 'total assets' means the sum of money, plus the aggregate of the adjusted basis for determining gain upon sale or exchange for Federal income tax purposes. * * * The determination of the total assets of any taxpayer shall conform to the method of accounting employed by such taxpayer in determining taxable income and to the rules applicable in determining earnings and profits.

"(iii) The term 'total liabilities' means all liabilities of the taxpayer, which are fixed and determined, absolute and not contingent, and includes those items which constitute liabilities in the sense of debts or obligations. The total deposits or withdrawable accounts, as defined in subparagraph (3) of this paragraph, shall be considered a liability. In the case of a building and loan association having permanent nonwithdrawable capital stock represented by shares, the paid-in amount of such stock shall also be considered a liability. Reserves for contingencies and other reserves, however, which are mere appropriations of surplus, are not liabilities."

5. In early December of 1951, an amendment to the plaintiff's by-laws was adopted as a new Section 18A, pertaining to permanent stock. Section 18A reads as follows:

"Permanent Stock of the par value of $100.00 per share may be issued, which shall constitute the permanent capital of this Company, and cannot be withdrawn until final dissolution of the Company."

tiff argues that it is nevertheless entitled to the additions claimed under section 166(c) of the 1954 Code.

Since, as Table I indicates, the years 1954, 1955, and 1956 are unaffected by the treatment of plaintiff's accrued income taxes[6] if the $400,000 nonwithdrawable capital stock is not treated as a part of surplus, the principal issue for those years is whether the $400,000 par value nonwithdrawable stock that was transferred to the capital account is to be included in surplus for purposes of section 593. The Commissioner of Internal Revenue claims that it should be so included. Such inclusion would reduce the difference between the surplus, undivided profits, and reserves and 12 percent of the total deposits. If so classified the effect would be to increase the income tax payable for the years involved, since plaintiff's additions to its reserve would be subject to the income tax. On the other hand, if the $400,000 of permanent nonwithdrawable stock dividend has become capital and is no longer a part of the surplus, undivided profits, and reserves the taxpayer would be favored by thus increasing the difference between that figure and 12 percent of the total deposits or withdrawable accounts.

We believe that when the transfer was made to the permanent nonwithdrawable stock that particular amount was no longer a part of the surplus, undivided profits, and reserves, but became a part of the capital structure.

The declaration of a stock dividend is simply a method of capitalizing and not of distributing accumulated profits.[7] It is accomplished by a charge against or a withdrawal from the surplus account and a resultant credit to the capital account accompanied by issuance of new stock to stockholders in proportion to their previous holdings.

"When a stock dividend is declared, the stockholders receive nothing from the assets and the transferred sum 'remains the property of the company, and subject to business risks which may result in wiping out the entire investment.' "[8]

To use a simple illustration: If a building and loan association had $100,-000 in surplus, $20,000 in undivided profits, and $20,000 in reserves and should decide that it wished to become an association with capital stock and should transfer $20,000 to permanent nonwithdrawable stock and declare the same as a stock dividend, it would necessarily reduce the total amount of surplus, undivided profits, and reserves by the sum of $20,000. In other words, that $20,000 would no longer be a part of the surplus, undivided profits, and reserves. This seems to be the ordinary everyday meaning of the words used by the statute, and to give them that meaning is a firmly established principal of statutory interpretation.

Defendant contends that when the Congress enacted section 593 it thought that it was dealing with purely mutual type savings associations without capital stock and that for this reason plaintiff's prior capitalization of surplus should not be recognized as reducing surplus for purposes of section 593. On the contrary, we believe that the Congress recognized that domestic building and loan associations might be stock associations since the qualifying phrases "not having capital stock represented by shares" or "without capital stock" were not applied to building and loan associations, where specifically mentioned, as they were to

6. Plaintiff's balance sheet for the year ended December 31, 1953, showed the sum of $94,000 as a "Reserve for Income Tax." In its brief, plaintiff also claims this as a liability on January 1, 1954; we therefore have included this amount as one of the liabilities to be considered in determining surplus, etc.

7. Eisner v. Macomber, 252 U.S. 189, 211, 40 S.Ct. 189, 64 L.Ed. 521 (1920).

8. United States v. Zions Savings and Loan Association, 10th Cir., 313 F.2d 331.

the other savings institutions covered by section 593.

Defendant further asserts that, in any event, plaintiff's nonwithdrawable capital stock should not be recognized as a transfer from surplus for tax purposes because a dividend "is in no sense a distribution of surplus."[9] A stock dividend, it points out, does not alter the proportionate interest of any stockholder or increase the intrinsic value of his holdings, the new certificates issued as a result of the transfer representing simply an increase in the number of shares.

Moreover, defendant argues, section 312(d) of the Internal Revenue Code of 1954 (26 U.S.C. § 312(d) (1958))[10] specifically provides that a distribution by a corporation of its stock shall not be considered a distribution of the "earnings and profits" of the corporation if the distribution was not subject to income tax in the hands of the distributee by reason of section 305(a) (which provides that a stock dividend is ordinarily nontaxable as income to the recipient thereof).[11] Defendant maintains that, since plaintiff's capital stock was derived from a stock dividend, and since that stock dividend was presumably not taxed as ordinary income of the stockholder, "earnings and profits"—and therefore "surplus, undivided profits, and reserves"—were not reduced by the distribution of the $400,000 par value in nonwithdrawable shares, at least not insofar as Federal income taxes are concerned.

We are of the opinion that the defendant errs in attempting to equate the statutory concept of "earnings and profits" as embodied in section 312(d) with the statutory concept of "surplus, undivided profits, and reserves" as used in section 593.

Section 593 was enacted to permit savings institutions to accumulate liberal bad debt reserves without having to pay income taxes on reasonable amounts annually dedicated to that purpose. Whether a stock dividend reduces the "surplus, undivided profits, and reserves" of an incorporated savings and loan association under section 593 is an entirely separate question from whether the same stock dividend reduces its "earnings and profits" under section 312 (d). A stock dividend can be recognized as reducing surplus for purposes of section 593 without in any way impinging upon the statutory requirement that it shall not be recognized as a reduction of "earnings and profits" for purposes of section 312(d). In the absence of specific congressional direction to the contrary, whether previous bona fide reductions of surplus by means of tax-free dividends were or were not taxed to their recipients can have no effect on the fact of its actual reduction so far as section 593 is concerned. Defendant's taxability

---

9. Ballantine, Corporations 482 (rev. ed. 1946).

10. 26 U.S.C. § 312(d) (1958), which reads as follows:
"§ 312. Effect on earnings and profits
\*　　\*　　\*　　\*　　\*
"(d) Certain distributions of stock and securities.—
"(1) In general.—
"The distribution to a distributee by or on behalf of a corporation of its stock or securities, of stock or securities in another corporation, or of property, in a distribution to which this Code applies, shall not be considered a distribution of the earnings and profits of any corporation—
"(A) if no gain to such distributee from the receipt of such stock or securi-

ties, or property, was recognized under this Code, or
"(B) if the distribution was not subject to tax in the hands of such distributee by reason of section 305(a)."

11. 26 U.S.C. § 305(a) (1958), which reads as follows:
"§ 305. Distributions of stock and stock rights
"(a) General rule.—
"Except as provided in subsection (b), gross income does not include the amount of any distribution made by a corporation to its shareholders, with respect to the stock of such corporation, in its stock or in rights to acquire its stock."

test, i. e., that distributions of surplus will be recognized only if taxed in the hands of the recipients thereof, therefore has no application to the determination of "surplus, undivided profits, and reserves" in the case at bar.

Defendant fails to recognize that a stock dividend may be one thing from the point of view of the recipient and quite a different thing from the point of view of the issuing corporation. Since we are concerned here with the taxability of the current income of the corporation itself, the legal significance of its stock dividend, as to it, is to be determined entirely from the standpoint of its effect on the plaintiff's corporate structure. From the point of view of the stockholder he may receive no more than what is already his, but from the point of view of the corporation—an entity entirely separate from its stockholders—a stock dividend capitalizes that portion of the accumulated income so distributed with definite legal consequences to the corporation. As to the corporation itself, a stock dividend ordinarily becomes a part of its legal capital. It is the same as if accumulated profits distributed to the shareholders in cash were received back from them in equal amounts as paid-in additional investments in the corporation. As the court said in Trefry v. Putnam, 227 Mass. 522, 535, 116 N.E. 904, 911, L.R.A.1917F, 806 (1917):

> "In essence the thing which has been done [a stock dividend] is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business * * * [T]he substance of the transaction is no different from what it would be if a cash dividend had been declared with the privilege of subscription to an equivalent amount of new shares."

■ Under the law of Ohio, state of plaintiff's incorporation, *stated capital* (which term is used instead of "capital," "capital stock," or "paid-in capital") may be increased by a transfer from any surplus however created by order of the directors or *upon payment of dividends in shares of stock*.[12]

Thus, a stock dividend, under Ohio law, becomes an indistinguishable part of stated capital and therefore legal capital. Since surplus (from whatever source and including reserves) is defined as the excess of assets over liabilities and stated or legal capital,[13] it is clear that under Ohio law and modern usage the par value of stock arising from a stock dividend would be subtracted from assets in determining the amount of surplus available to a corporation on its statement date.

■ Defendant argues that, nevertheless, plaintiff's $400,000 nonwithdrawable shares of capital stock cannot be recognized as a part of its legal capital because it was not "paid-in" within the meaning of section 1.593–1(d) (2) (iii) of the Treasury regulation promulgated pursuant to section 593.

That section of the Treasury regulations expressly recognizes that capital stock is not a part of surplus, undivided profits, and reserves but attempts to qualify such recognition with the provision that "[i]n the case of a building and loan association having permanent nonwithdrawable capital stock represented by shares, the *paid-in* amount of such stock shall be considered a liability."[14] [Emphasis supplied.] According to defendant's interpretation of this regulation, a stock dividend cannot be *paid-in* stock. Paid-in stock, it asserts, is stock purchased with funds from sources outside the corporation itself and hence is exclusive of a stock dividend.

We do not believe the statutory language of section 593 authorizes the use of the words "paid-in" in this context. As defendant construes the regulation, it

---

12. Baldwin's Ohio Rev.Code Ann. § 1701.30 (1958).

13. Baldwin's Ohio Rev.Code Ann. § 1701.-32(A) (1958).

14. See supra note 4.

would go beyond the statute. The law is embodied in the statute and not in the interpretative regulation thereof. Plaintiff is required by the statutory formula of section 593 merely to determine its "surplus, undivided profits, and reserves" as of the beginning of the taxable year. If defendant is permitted to modify the statutory language with the requirement that capital stock be "paid-in" and then to interpret "paid-in" as excluding payment by transfers from surplus accounts within the corporation, thereby denying plaintiff's nonwithdrawable shares recognition as stated or legal capital and not deductible from assets in determining "surplus, undivided profits, and reserves," the effect is to subject plaintiff to rules of corporation law not recognized either by Ohio law or by general corporation law—and without a clear mandate from the Congress. We would avoid such an erroneous result by reading the Treasury regulation where it refers to "paid-in" stock as "stated" or "legal" capital, and we hold that it should be so read.

▮ In summary, we think it must be assumed that the Congress, in enacting section 593, was cognizant of the fact that the collective accounts called "surplus, undivided profits, and reserves" are not stable elements on corporate balance sheets; that they can be, and frequently are, reduced for legitimate corporate purposes. So far as application of the formula in section 593 is concerned, it is evident from the wording of that section that the Congress intended the effect of a dividend payment to be the same on all incorporated savings and loan associations, whether paid in cash or in stock, at least as to those payments made prior to December 31, 1951. We therefore conclude that, since reductions in surplus to pay cash dividends are unquestionably reductions of the statutory amounts of "surplus, undivided profits, and reserves" involved in this case, a reduction of surplus (accumulated earnings) for the purpose of a stock dividend, where that dividend is irrevocably dedicated to the corporation's stated or legal capital, shall also be considered a reduction of the statutory "surplus, undivided profits, and reserves." The Tenth Circuit in a well reasoned opinion reaches the same conclusion on similar facts. [United States v. Zions Savings and Loan Association, supra, note 8.]

Plaintiff is therefore entitled to all of the deductions taken for additions to its bad debt reserve, unless, in regard to the year 1957, its deduction from surplus of Federal income taxes accrued during 1956 must be disallowed. (See Table I, Columns H and K.)

▮ Plaintiff, relying on the regulation's definition of "total liabilities" as being "all liabilities of the taxpayer which are fixed and determined, absolute and not contingent, and includes those items which constitute liabilities in the sense of debts or obligations," [15] contends that its accrued Federal income taxes on January 1 for each of the years 1955, 1956, and 1957 must be treated as a liability on those dates and used to reduce its "surplus, undivided profits, and reserves" otherwise shown on those dates. The Commissioner of Internal Revenue has rejected this method of accounting, presumably on the ground that in his opinion such a method of accounting by a cash basis taxpayer does not clearly reflect income.

We are in agreement with this position. Such an accrued liability is inconsistent with the cash method and does not, in fact, truthfully reflect income. We conclude that plaintiff's proposed method of treating its Federal income taxes is improper and the regulations may not be so interpreted as to permit it. Reference to Column K of Table I indicates that even with the disallowance of its claimed deductions for accrued taxes for the years 1954 through 1956 its surplus, undivided profits, and reserves are still less than 12 percent of deposits or withdrawable accounts by a greater amount than its additions to bad

15. See supra note 4.

**TABLE I**

Plaintiff's "surplus, undivided profits, and reserves" computed under plaintiff's interpretation of section 593 of the 1954 Code. Columns E and F show alternative sums claimed by plaintiff as total liabilities. Columns H and K show the resulting maximum amounts, if any, of "reasonable additions" to its reserves allowable for the taxable years indicated.

| A | B | C | D | E | F | G | H | K |
|---|---|---|---|---|---|---|---|---|
| Date | Assets (January 1) | Total liabilities claimed by plaintiff, including non-withdrawable shares and accrued taxes for prior year (January 1) | Total liabilities claimed, exclusive of accrued taxes (January 1) | Surplus, undivided profits, reserves under Column C | Surplus, etc., under Column D | 12% of total deposits or withdrawable accounts (December 31) | Maximum reasonable addition to reserves under Column E | Maximum reasonable addition to reserves under Column F |
| 1954 | $19,540,413 | $17,635,630 | $17,541,630 | $1,904,783 | $1,998,783 | $2,140,893 | $236,110 | $142,110 |
| 1955 | 20,612,108 | 18,612,798 | 18,496,343 | 1,999,810 | 2,115,765 | 2,229,001 | 229,691 | 113,236 |
| 1956 | 21,258,710 | 19,156,218 | 19,029,319 | 2,102,492 | 2,229,391 | 2,337,707 | 235,215 | 108,316 |
| 1957 | 22,296,337 | 20,078,917 | 19,945,858 | 2,217,420 | 2,350,479 | 2,348,614 | 131,194 | None (—1,865) |

**TABLE II**

Plaintiff's "surplus, undivided profits, and reserves" computed under defendant's interpretation of section 593 of the 1954 Code.

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Date | Assets (January 1) | Total liabilities as defined by defendant (January 1) | Surplus, undivided profits, reserves under defendant's definition * | 12% of total deposits or withdrawable accounts (December 31) | Maximum reasonable addition to reserves | Amount by which surplus, etc., exceeds 12% of deposits, etc. |
| 1954 | $19,540,413 | $17,141,630 | $2,398,783 | $2,140,893 | None | $257,890 |
| 1955 | 20,612,108 | 18,096,343 | 2,515,765 | 2,229,001 | None | 286,764 |
| 1956 | 21,258,710 | 18,629,319 | 2,629,391 | 2,337,707 | None | 291,684 |
| 1957 | 22,296,337 | 19,545,858 | 2,750,479 | 2,348,614 | None | 401,865 |

* Defendant's figures on page 11 of its brief do not reflect, as do these, its later position on oral argument that plaintiff's $400,000 par value *withdrawable* capital stock is also deductible from assets for the purpose of determining surplus, etc.

debt reserves. For those years its additions to bad debt reserves are therefore allowable as deductions from income. But for the year 1957 there was no excess above the designated 12 percent, but rather a deficit, with the result that under the formula of section 593 plaintiff's addition to its bad debt reserve for that year must be disallowed as a deduction from taxable income.

As to the year 1957, there remains for us to consider plaintiff's alternative ground that its additions are reasonable and hence deductible under the general provisions of section 166(c) of the Code. Section 593 of the Code and section 1.593–2 of the regulations [16] provide that, to the extent the formula provision is inapplicable, the Secretary (or his delegate) may allow a deduction for a reasonable addition to a reserve for bad debts.

As we have seen, neither this court nor the Commissioner of Internal Revenue has found that plaintiff is entitled to make an addition to its bad debt reserve in the year 1957. The latter has likewise refused to allow the claimed addition under the broad discretionary power conferred upon the Secretary or his delegate in section 166(c).

 The legislative enactment makes it clear that the discretion to determine what is a reasonable addition to the bad debt reserve of a savings and loan association over and above what it is entitled to under the formula of section 593 is conferred upon the administrative agency, not upon the court. We find no substantial basis for a finding of arbitrary action by the Commissioner, and we therefore consider it our proper function to accept as final the administrative determination as to the year 1957, disallowing plaintiff's claimed addition to its bad debt reserve. The Commissioner acted in conformity with the statute, and a challenge to his discretion raises no question of law.[17]

"Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute

constitutes him the sole and exclusive judge of the existence of those facts." [18]

Accordingly, the plaintiff is entitled to recover the amounts of $7,815.58, $12,-492.78, and $11,724.13 for the years 1954, 1955, and 1956, respectively, together with interest as provided by law, and judgment is entered to that effect. As to the claim for the year 1957, the petition is dismissed.

DAVIS, DURFEE, LARAMORE and WHITAKER, JJ., concur.

---

16. Treas.Reg. § 1.593–2 (1956) reads as follows:

"Where 12 percent of the total deposits or *withdrawable accounts of an institution* at the close of the taxable year is equal to or less than the sum of such institution's surplus, undivided profits, and reserves at the beginning of the taxable year, a reasonable addition to the reserve for bad debts as determined under the general provisions of section 166(c) may be allowable as a deduction from gross income."

17. United States v. George S. Bush & Co., 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259 (1940).

18. Martin v. Mott, 12 Wheat. 19, 31, 25 U.S. 19, 31, 6 L.Ed. 537 (1827).