HUDSON CITY SAVINGS BANK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2716–67.   Filed October 23, 1969.

*David Beck*, for the petitioner.
*Alan M. Stark*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for the calendar years 1962, 1963, and 1964 in the following amounts:

| Year | Deficiency |
|------|-----------|
| 1962 | $748,693.10 |
| 1963 | 20,748.03 |
| 1964 | 71,903.53 |

By amendments to his answer respondent has alleged certain increased deficiencies for these taxable years.

Some adjustments have been agreed to or conceded and can be given effect in the Rule 50 computation. The issues remaining for decision are: (1) Whether section 591, I.R.C. 1954,[1] is the exclusive statutory authority for the allowance of deductions to petitioner, a

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

mutual savings bank which uses the accrual method of accounting, for interest paid to its depositors; (2) whether under section 591 semiannual interest on deposits for the last 6 months of each of the years 1962, 1963, and 1964 was properly deducted by petitioner in such years or whether the claimed deductions are allowable in each succeeding year; (3) whether under section 593 the semiannual interest on deposits for the last 6 months of each of the years 1959 through 1963 represented a part of petitioner's "reserves" at the beginning of the taxable years 1960 through 1964 or whether such amounts of interest were properly treated by petitioner as "liabilities" in the computation of net worth under section 593.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found to the extent deemed relevant and material.

Hudson City Savings Bank (herein called petitioner) is a mutual savings bank which was chartered under the laws of the State of New Jersey in 1868. It is subject to the provisions of the statutory law of New Jersey governing savings banks and banking generally. Petitioner had its principal place of business in Jersey City, N.J., at the time of filing its petition in this proceeding.

From the time of its organization until December 31, 1958, petitioner kept its books and records and prepared its Federal corporate income tax returns on a cash receipts and disbursements method of accounting. On March 5, 1959, petitioner made application to the respondent for permission to change its method of accounting from the cash receipts and disbursements method to an accrual method, beginning with the taxable year ended December 31, 1959. On January 11, 1961, petitioner's application was finally granted and approved.

Petitioner filed its Federal corporate income tax returns with the district director of internal revenue at Newark, N.J., for the taxable years 1958 through 1964. Petitioner also filed an amended Federal corporate income tax return with the district director of internal revenue at Newark for the taxable year 1959. All of these returns except for the return for the taxable year 1958 and the original return for the taxable year 1959 were prepared on an accrual method of accounting. The return for the taxable year 1958 and the original return for the taxable year 1959 were prepared on a cash receipts and disbursement method of accounting.

From 1953 through the taxable years in issue, petitioner made payments on savings depositors' accounts on a semiannual basis—one for the 6-month period ended June 30 and one for the 6-month period ended December 31. The payments have been referred to interchangeably as dividends and interest, but for convenience we will refer to them as interest.

From 1953 until 1964, petitioner's bylaws provided that interest would be credited to savings accounts on the last days of June and December, provided the savings had been on deposit for 6 months or more. No interest would be paid on amounts withdrawn before such interest dates. However, the bylaws also provided that petitioner's board of managers could amend the bylaws by resolutions at any time and without notice. The minutes of the meetings of the board of managers from 1953 through the first half of 1959 contained resolutions voted upon by the board which stated that the semiannual interest for the first half of each year should be credited at a certain rate on June 30 of that year and that the semiannual interest for the second half of each year should be credited at a certain rate on the last business day of that year. But on December 10, 1959, the board of managers approved a resolution that semiannual interest "for the period ending December 31, 1959," should be paid and credited to depositors' accounts on January 4, 1960, the first business day of the new year. In subsequent years the board of managers continued to declare interest "for the second half of the year" payable on the first business day of the new year. On May 14, 1964, the published edition of the bylaws was formally amended to reflect this practice.

Despite petitioner's stated policy of not allowing interest on amounts withdrawn prior to the interest dates, the depositors were in fact permitted to withdraw both savings and interest for the second period as much as 3 days before the interest date during the years here involved.

Petitioner kept a subsidiary ledger known as a savings ledger card for each savings depositor's account. The savings ledger cards reflected all deposits, withdrawals, dividends, and running balances of each account, as well as the date of each transaction.

It was petitioner's practice to compute the semiannual interest for the second half of each year and post entries for such amounts on each savings ledger card before the end of the year. Petitioner began making computations about 50 days before posting the computations on the savings ledger cards, and devoted about 5 days to posting the computations on the savings ledger cards. It was petitioner's practice to identify each entry for the semiannual interest with a rubber-stamp mark indicating the date for crediting the interest as determined in the appropriate resolution of the board of managers.

Petitioner kept a general ledger during the years in issue. It was petitioner's practice to take the total of the semiannual interest for the second half of each year from the savings ledger cards and make the following entries of that total in the general ledger: On the last business day of each year petitioner debited the account "Accrued Interest Expense" and credited the account "Reserve for Dividends Paid to Depositors." On the first business day of each following year

petitioner debited the account "Reserve for Dividends Paid to Depositors" and credited the account "Savings Deposits."

Petitioner prepared "tickets" which authorized and explained all entries in the general ledger. The "tickets" relating to the entries on the first business day of each following year bore the same date and the explanation "Interest Credited to Savings Accounts."

On its Federal corporate income tax returns prior to 1959, petitioner deducted the interest credited to its depositors on the June and December interest dates. However, the action of the board of managers at its meeting of December 10, 1959, moved the interest date for the second half of 1959 to January 1960. At that time petitioner was still on a cash basis and intended by such action to postpone the deduction of interest for the last 6 months of 1959 until it filed its 1960 return. Petitioner was in such a position that even without deducting interest for the second period of 1959, it would show no taxable income for that year. On its initial 1959 Federal income tax return petitioner claimed a deduction only for the first interest period. After filing its 1959 return petitioner received permission to change to the accrual method of accounting. Petitioner thereupon filed an amended return for the taxable year 1959, claiming as an additional deduction the interest paid on deposits held during the second interest period. Petitioner has continued through the years in question to deduct interest for the second period in the same manner, i.e., as an item accrued on December 31 of each year.

Respondent disallowed the deductions for second-period interest payments in each of the years 1962, 1963, and 1964 on the ground that the interest was not credited to depositors' accounts and withdrawable by depositors at the end of those years, as required by section 591. Treating the amounts as properly deductible in each subsequent year, respondent determined net disallowances under section 591 as follows:

| Year | Amount |
| --- | --- |
| 1962 | $1, 481, 182. 13 |
| 1963 | 166, 670. 44 |
| 1964 | 148, 922. 44 |

Treating the claimed interest deductions as reserve items under section 593, respondent also made the following adjustments to petitioner's deductions for additions to the reserve for bad debts: 1962 disallowed, $78,220.47; 1963 allowed additional, $29,279.96; 1964 allowed additional, $4,831.60.

OPINION

Petitioner argues first that the applicable provision with respect to the deduction of interest paid on savings deposits is section 163(a) [2]

[2] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

rather than section 591.[3] Petitioner argues that section 591 is a provision directed solely at mutual banking institutions which are on a cash basis and that its purpose is to enable them to deduct interest amounts which are constructively paid by means of credit entries to depositors' accounts. To the contrary, respondent contends that section 591 is the exclusive statutory authority for mutual savings banks with respect to the deductibility of dividends or interest paid on deposits without regard to the method of accounting used. We agree with respondent.

A review of the legislative history of section 591 reveals no hint of an intended distinction between accrual and cash basis taxpayers. Nor is there any discussion of a need to allow constructive interest payments by cash basis banks. In fact, cash basis commercial banks utilizing section 163(a) and its predecessors were allowed deductions for constructive interest payments if the depositors had an immediate right to withdraw the amounts. *First National Bank of Braddock*, 38 B.T.A. 1244 (1938) ; cf. *Georgia State Savings Association*, 4 B.T.A. 748 (1926). Thus there was no need for section 591 as an enabling provision for cash basis banks.

As petitioner has acknowledged, the stated purpose of section 313 of the Revenue Act of 1951, which contained the predecessor provisions of section 591, was to change the tax-exempt status of mutual savings banks. Until 1951 they had enjoyed a competitive advantage over commercial banks. Instead of distributing profits to depositors, mutual savings banks had accumulated large reserves from which they financed their rapid growth, tax free. S. Rept. No. 781, to accompany H.R. 4473 (Pub. L. 183), 82d Cong., 1st Sess., p. 24, 25 (1951) ; 97 Cong. Rec. 11841-11842 (1951) (remarks of Senator Kerr on H.R. 4473). The result was that profits were not being taxed either in the hands of the institutions or in the hands of the depositors.

In operation the provisions of the 1951 Revenue Act have left mutual savings banks untaxed because interest and dividends paid to depositors are deductible under section 591 and because of the generous limits on bad debt reserves under section 593. H. Rept. No. 1447, to accompanying H.R. 10650 (Pub. L. 87-834), 87th Cong., 2d Sess., p. 32 (1962). But by establishing ceilings on additions to untaxed reserves under section 593, and by forcing distributions to depositors under section 591 in lieu of paying taxes on the amounts, the

---

[3] SEC. 591. DEDUCTION FOR DIVIDENDS PAID ON DEPOSITS.

In the case of mutual savings banks, cooperative banks, domestic building and loan associations, and other savings institutions chartered and supervised as savings and loan or similar associations under Federal or State law, there shall be allowed as deductions in computing taxable income amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends or interest on their deposits or withdrawable accounts, if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw.

aim and effect of the provisions is consistent with the criticism initially voiced against these institutions.

It is the threat of taxation which forces the distribution of interest to depositors. Section 591 merely allows the deduction. Petitioner argues that section 163 (a) allows the same deduction in more general terms. But section 591 is specifically directed to "the case of mutual savings banks." In addition, by requiring, unlike section 163(a), that the interest be "withdrawable on demand," section 591 allows a mutual savings bank a deduction only when the interest becomes taxable in the hands of the depositors. Under section 163(a) a bank could deduct accrued interest although the depositors might have no right to it (and no tax to pay on a cash basis) until termination of their accounts. The bank would again have the complete use of untaxed reserves, a situation against which the 1951 provisions were directed. The interest of the depositors in the growth of their mutual savings bank makes this speculation not unlikely. Finally, the "interest" paid by mutual savings banks is more than the interest paid for the use of deposits. It is also a distribution of profits, and to that extent is unlike the "interest" normally deducted by commercial banks under section 163(a). Dividends paid by commercial banks are deductible under sections 561 and 583, not section 163(a).

The plain language of section 591 and the applicable regulations make no distinction between cash basis and accrual basis taxpayers, and there is no clue in the legislative history of the statute that any such distinction was ever considered by Congress. Furthermore, it is a well-established rule of statutory construction that where there is a specific statute (sec. 591) and also a general statute (sec. 163(a)) which in its comprehensive scope would include matters embraced in the specific statute, the specific one should be considered as the exclusive authority governing matters within its limited scope. *Bulova Watch Co.* v. *United States*, 365 U.S. 753 (1961).

For these reasons we conclude that section 591 is exclusively applicable to interest deductions of mutual savings banks, whether they be on a cash or an accrual basis of accounting.

Petitioner argues in the alternative that, if section 591 is applicable, it has satisfied the statutory requirements and is thus entitled to the claimed deductions in the earlier years. Section 591 requires that the interest be "paid to, or credited to the accounts of, depositors" and that such amounts be "withdrawable on demand subject only to customary notice of intention to withdraw."

At trial petitioner showed that the physical process of making credit entries to depositors' accounts was completed before December 31 in each of the years involved herein. On the other hand, it is clear that the entries were dated *as of the first business day of the following year.*

We will assume for the moment, however, that the interest was "credited to the accounts" by December 31. "In view of the applicable statute and regulations, the date upon which the dividends can be demanded and withdrawn, regardless of the date upon which the dividends are credited or paid, determines the taxable year in which the dividends are deductible." *Hancock County Federal Saving & Loan Association*, 32 T.C. 869, 877 (1959). Although the taxpayer in the *Hancock* case was on a cash basis, this Court's reading of the provision seems required both by the language of the statute and the applicable regulation.[4]

For the same reason, the deduction does not depend on whether the interest was properly accrued in the earlier or the subsequent year. It is the right of depositors to withdraw, and not petitioner's method of accounting, which controls the timing of the deduction. Contrary to petitioner's contention, this does not place accrual basis mutual savings banks at a disadvantage with regard to those on the cash basis. Neither type of bank will be allowed a deduction until the interest is made withdrawable on demand. The provision does, however, prevent accrual basis banks from gaining advantage over cash basis banks by deducting amounts over which they would retain full control. And, as previously mentioned, the requirement precludes the accumulation and use of untaxed profits. It is worth noting that there are other provisions of the Code directed at possible abuses of accrual method accounting. Compare sec. 170 (charitable deductions), sec. 267 (deductions for interest paid to related taxpayers), sec. 404 (deductions for payments to employee benefit funds).

The key question is whether the interest was "withdrawable on demand" by petitioner's depositors on December 31 of the years in issue. Petitioner proved that depositors were allowed to withdraw their interest on any of the last 3 days in December in each year. But the right of depositors to withdraw was governed by petitioner's bylaws, which in turn referred to the semiannual resolutions of petitioner's board of managers. Each of these resolutions declared that interest for the 6-month period ending December 31 would be payable on the first business day of January of the following year. The practice of allowing withdrawals in December "was optional with the bank, and was merely permitted by the officers." *First National Bank of Braddock, supra* at 1247. In *Braddock*, a commercial bank on the cash basis was

---

[4] Sec. 1.591–1(a)(2), Income Tax Regs., provides, in pertinent part, as follows:

The deduction provided in section 591 is applicable to the taxable year in which amounts credited as dividends or interest become withdrawable by the depositor or holder of an account subject only to customary notice of intention to withdraw. Thus, amounts which, as of the last day of the taxable year, are credited as dividends or interest, but which are not withdrawable by depositors or holders of accounts until the following business day, are deductible under section 591 in the year subsequent to the taxable year in which they were so credited. * * *

denied a deduction (under the predecessor of 163(a)) for interest withdrawable-in-fact in December 1934 because it was not withdrawable of right until January 2, 1935. We think this rule was incorporated into section 591 and applied to all mutual savings banks. The regulations so suggest. Sec. 1.591–1(a) (2), Income Tax Regs.

Interpreting "withdrawable on demand" with the rights of depositors is consistent with the framework of granting a deduction to mutual savings banks only when the amounts become taxable to the depositors. On the facts established in this record we hold that the interest was not "withdrawable on demand" until January in each year. Accordingly, we sustain respondent's determination.

As to the final issue, there is no dispute concerning petitioner's coverage by section 593. The controversy centers around how the provisions of that section should be applied. Section 593 imposes a ceiling on certain additions to petitioner's bad debt reserve in an "amount by which 12 percent of the total deposits or withdrawable accounts of depositors of the taxpayer at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of such year."

Petitioner's books and records in each of the taxable years 1959 through 1963 reflected its second-half "interest" in an account designated "Reserve For Dividends Paid To Depositors" at the end of each taxable year and at the beginning of each succeeding taxable year. On the first business day of the succeeding taxable year the amount in this account was transferred to another account designated "Savings Deposits." The resolutions authorizing the second-half "interest" for each of the taxable years 1959 through 1963 were substantially similar in providing that it should be credited on the first business day of each succeeding year.

Respondent has disallowed a part of petitioner's additions to bad debt reserves on the theory that the interest paid on deposits for the second interest period was not a "liability" at the end of the years in question, but instead was "reserves." Petitioner characterizes it a "liability" which should be subtracted from assets in order to arrive at "surplus, undivided profits, and reserves." Sec. 1.593–1(d) (2) (i), Income Tax Regs.

Respondent's basic position is that because the interest amount did not produce a deduction under section 591, it cannot be treated as a "liability." But we read section 591 as disallowing deductions in any case where the interest is not withdrawable. As noted above, the withdrawability requirement is in addition to accounting requirements. Interest may be properly accrued without being withdrawable or deductible under section 591.

Respondent also relies on section 1.593–1(d) (2) (iii), Income Tax Regs., defining "total liabilities," which provides that the "total de-

posits or withdrawable accounts * * * shall be considered a liability."
Arguing that the interest at issue is not part of the subgroup "deposits
and withdrawable accounts," respondent concludes that it cannot be a
part of the larger group, i.e., liabilities. We think the argument is
unsound.

Respondent acknowledges that the definition of "liability" as used
in section 593 should be given an interpretation consistent with the
taxpayer's method of accounting. Section 1.593–1(d)(2)(iii), Income
Tax Regs., provides that the "determination of the total assets of any
taxpayer shall conform to the method of accounting employed by
such taxpayer in determining taxable income." According to section
1.593–1(d)(2)(iii), " 'total liabilities' means all liabilities of the tax-
payer which are fixed and determined, absolute and not contingent."
The approaches are essentially equivalent. They find support in case
law, viz, a cash basis taxpayer was not allowed to reduce "surplus,
undivided profits, and reserves" by treating accrued Federal income
tax as a "liability" for section 593 purposes. See and compare *Buckeye
Savings & Loan Co.* v. *United States*, 312 F. 2d 912 (Ct.Cl. 1963),
which supports petitioner's position herein. In that case, the de-
fendant argued initially that certain stock dividends declared and
issued in December 1951 (while savings and loan associations were
still untaxable), were still part of the plaintiff's surplus as of Janu-
ary 1 of the subsequent year because the distribution was not con-
sidered a distribution of "earnings and profits" of the corporation if
it was not subject to income tax in the hands of the distributees under
section 305(a). The Court of Claims held that the defendant erred in
attempting to equate the statutory concept of "earnings and profits"
under section 312(d) with the statutory concept of "surplus, un-
divided profits and reserves" as used in section 593. The court stated
that a stock dividend can be recognized as reducing surplus for pur-
poses of section 593 without in any way impinging upon the statutory
requirement that it shall not be recognized as a reduction of "earnings
and profits" for purposes of section 312(d). That is true here. The
fact that an item may not qualify as a deduction for section 591
purposes in a particular year does not mean it cannot qualify as a
"liability" for section 593 purposes in such year. Furthermore, the
defendant in the *Buckeye* case argued that because the plaintiff was
on the cash basis of accounting, its accrual of income taxes on Jan-
uary 1 for each of the prior years did not clearly reflect its income
and was not consistent with its method of accounting. This argument
would have had no cogency if plaintiff had been on the accrual method
of accounting.

Hence the crucial question is *when* the interest became a "liability"
for this accrual basis taxpayer. Accrual is proper "in the taxable year

in which all events have occurred which establish the fact of liability." Secs. 1.446–1(c)(1)(ii) and 1.461–1(a)(2), Income Tax Regs.

Petitioner's bylaws provided, in effect, that interest would be payable on accounts on deposit for 6 months or more which were not withdrawn before the interest date. By resolution of the board of managers the interest payment date for each year in question was declared to be the first business day in January. But even though the interest was payable on the first business day of January, petitioner had already incurred an obligation to all who had money on deposit at the close of business December 31. The interest payable in January was for "the second half of the year" preceding. The liability thus accrued at the close of business December 31, and at that time all events had occurred which fixed both the obligation and the amount. The facts are strikingly similar to those present in the leading case of *United States* v. *Anderson*, 269 U.S. 422 (1926), in which taxpayer's 1916 liability for a munitions tax was *fixed* at the end of its operations December 31, although payment was not due until 1917. In the instant case the interest was fixed and determined since the computations were definite, based on an exact amount of deposits, made before the end of the year and entered on the individual deposit ledger accounts of each depositor before the end of each year. There were no conditions to be met by the depositors. Their right to such interest was absolute and not contingent. The rate of interest had been set in advance and was not subject to any change from the amount accrued. The amount constituted an obligation in the sense of being a debt. It was a liability that was fixed and certain, absolute and not contingent and was owed, without equivocation. The amount of interest fully qualifies as a "liability" for purposes of section 593. Accordingly, we conclude that the interest accrued in the earlier years and was properly treated by petitioner as a "liability" within the purview of section 593.

Petitioner's method of accounting began in the taxable year 1959 and has continued through the taxable years in issue. Consequently, respondent has regarded its adjustments as a change in petitioner's method of accounting and has made the adjustment required under section 481 to prevent the duplication of deductions. See *Peoples Bank & Trust Co.*, 50 T.C. 750, 756 (1968), affd. 415 F. 2d 1341 (C.A. 7, 1969); *Shepherd Construction Co.*, 51 T.C. 890, 899 (1969). Respondent has made no adjustment under section 481 which would be deemed an adjustment with respect to pre-1954 Code years. In addition, respondent has agreed that the deduction for dividends received in the taxable year 1961 gives rise to a net operating loss of $80,967.45 in that year which may be carried over to the taxable year 1962.

To reflect the agreed or conceded adjustments and the conclusions reached herein,

*Decision will be entered under Rule 50.*